# CLARENCE G. ALBERTSON v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

April 15, 1954.

No. 36,180.

[1]Reported in 64 N. W. (2d) 175.

*A. C. Erdall, S. W. Rider, Jr.,* and *G. F. Bennett,* for appellant.
*Donald A. Chapman, James A. Dooley,* and *William C. Wines,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Plaintiff, the head brakeman on defendant's freight train, was injured on November 19, 1951, at Linby, Iowa, while he was in the act of removing company mail and a switch light from the cab of the locomotive. Defendant operated a way freight train between Nahant and Ottumwa, Iowa, and for about two years prior to the time of the accident, it had been customary to carry company mail on the train for delivery to intermediate stations. Usually upon leaving Nahant the mail was carried in the L. C. L. (less than a carload lot) merchandise car which was cut off at Richmond. Mail for points

west of Richmond was carried in the caboose until Washington was reached; then the mail for more westerly points was transferred to the engine cab for delivery by the head brakeman. The custom of carrying mail, inclusive of packages which were not too bulky, in the engine cab rather than in the caboose was based on convenience in the making of deliveries, since it was easier to stop the locomotive in front of a station than to "spot" the caboose at the end of a long train of freight cars.

On November 19, 1951, the freight train made the usual stop at Washington, Iowa, where the conductor handed the plaintiff in the engine cab some company mail and a switch light for delivery to Linby, Iowa. About 6:30 p. m. the train reached Linby and the engine was stopped in front of the station. Plaintiff, as head brakeman, proceeded to unload and deliver the mail and the switch light. In order to dismount from the engine cab, it was necessary for him to descend a series of four steps at the rear of the cab. These steps are of unequal height and are flanked on one side by a handrail on the rear of the engine and on the other side by a handrail which is fastened to the forward part of the tender. These handrails are required under a ruling of the Interstate Commerce Commission. The defendant railroad had instructed its employees that in descending from the engine one should face the engine, place *both* hands on the handrails, and back down step by step.

When the train stopped the engineer and fireman were busy in the cab. No one was present at the station. The plaintiff picked up the letters meant for Linby in his right hand, hooked his own signal lantern over his right thumb, placed the switch light to be delivered near the edge of the cab, and began to back down the steps. He descended as far as he could without putting himself out of reach of the switch light. At that point he stopped with both feet on one step (he doesn't remember which step) and reached up for the switch light with his left hand while the right grasped the right handrail. He grasped the handle of the switch light and tried to pull it toward him; somehow the light had become caught on the deck of the cab and would not move. He gave it a hard tug and it came loose sud-

denly. The force of the sudden release twisted his body around to the right and caused a sharp pain in his back. He neither fell nor dropped the light but continued down the steps, placed the mail and the light at the appointed spot, climbed into the engine, and completed the run.

Plaintiff worked the next day, though his back and legs were very painful. The second day he was unable to work and has not worked since. In the meantime he has been examined and treated by a number of doctors who have differing opinions as to the nature and extent of his injuries. These opinions range all the way from merely a sprained back to a ruptured disc resulting in permanent disability and requiring an operation for partial recovery. X rays show that he has a congenital deformity of one vertebra in his lower back, though it had not given him any trouble prior to this accident. He has suffered pain constantly and must wear a brace which keeps his back stiff and reduces pain. During the period from April 14, 1952, to May 1, 1952, he stayed at St. Joseph's Hospital in Ottumwa, Iowa, for purposes of treatment and examination.

In August 1952 plaintiff commenced an action under the Federal Employers' Liability Act against the defendant to recover damages for the injuries to his back. After a verdict of $60,000 for the plaintiff, defendant appeals from an order denying its motion for judgment notwithstanding the verdict or a new trial.

We are concerned with the question of whether there was an issue of negligence for the jury and also with other questions relating to the admissibility of evidence.

■ Is the verdict sustained by the evidence on the issue of negligence? The basis of a defendant employer's liability under the Federal Employers' Liability Act is negligence which in whole *or in part* was a proximate cause of plaintiff's injury; and plaintiff, subject to federal judicial standards as to the sufficiency of the evidence, has the burden of presenting the probative facts from which the jury, in the light of the evidence as a whole, can reasonably infer such negligence and the proximate causal relation.[2] If, after taking

2Ellis v. Union Pac. R. Co. 329 U. S. 649, 653, 67 S. Ct. 598, 600, 91 L. ed. 572, 576; see, Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d)

the view of the entire evidence in the light most favorable to the verdict as must be done under the federal rule[3] (which corresponds with the rule of this court in cases arising under our own laws),[4] reasonable men can draw different conclusions from the evidentiary facts, then the question of actionable negligence is one for the jury and not for the court.[5]

■ In passing upon the sufficiency of the evidence herein, it is to be observed that defendant's negligence, if any, does not relate to defective equipment but solely to defendant's acquiescence in the long-standing practice and custom of carrying company mail and L. C. L. packages in the engine cab. Clearly, the defendant knowingly accepted and relied upon the practice as a practical method to be followed by its employees in the distribution of mail and parcels to stations such as Linby. In fact defendant strenuously urges that the custom of carrying articles on the locomotive had existed without danger to anyone as long as any of the witnesses could remember and that therefore no negligence could be predicated on the practice of similarly carrying mail and small packages. At the outset we dispose of this contention by observing that it is well settled, subject to certain exceptions, that upon the issue of negligence evidence of a local or general custom, although generally admissible, is not a conclusive test of reasonable care.[6] In Bimberg v. N. P. Ry. Co. 217 Minn. 187, 192, 14 N. W. (2d) 410, 413, we said:

"Local usage and general custom, either singly or in combination, will not justify or excuse negligence. They are merely foxholes in

410 (certiorari denied, 323 U. S. 752, 65 S. Ct. 87, 89 L. ed. 602) ; 2 Roberts, Federal Liabilities of Carriers (2 ed.) § 821.

[3]New York, C. & St. L. R. Co. v. Slater (7 Cir.) 23 F. (2d) 777.

[4]Bimberg v. N. P. Ry. Co. *supra*.

[5]Gardner v. Michigan Cent. R. Co. 150 U. S. 349, 14 S. Ct. 140, 37 L. ed. 1107; New York, C. & St. L. R. Co. v. Slater, *supra*.

[6]Langner v. Caviness, 238 Iowa 774, 28 N. W. (2d) 421, 172 A. L. R. 1135; Annotation, 172 A. L. R. 1141; see, 38 Am. Jur., Negligence, §§ 34, 317 to 319; 4 Dunnell, Supp. § 7053a; Prosser, Torts, § 37; 1 Shearman & Redfield, Negligence (Rev. ed.) § 10.

one of the battlefields of law, providing shelter but not complete protection against charges of negligence."

■ Does the evidence sustain a finding that the utilization of the custom constituted negligence on the part of the defendant which contributed proximately, in whole or in part, to the accident whereby plaintiff was injured? Although the question is a close one we cannot say that the jury could not predicate negligence thereon. In the first place the jurors could infer from the Interstate Commerce Commission safety rule and from defendant's own standing instruction to its employees, as well as from other evidence, that reasonable care required that an employee should grasp the side rails with both hands when descending from the engine cab. The jurors could further infer that it was negligent for the defendant to require plaintiff in descending from the cab to carry not only a signal lantern but also company letters and a switch light which weighed about eleven pounds, whereby it would be difficult, if not impractical, for plaintiff to follow the safe procedure of grasping the side rails with both hands. He needed the full use of at least one hand to carry the extra letters and the heavy switch light, and this reasonably necessitated a violation of a standing safety rule. The jurors could conclude that, if plaintiff had been burdened with nothing more than his signal lantern, no accident would have occurred because both of his hands would have been used to steady his descent. Under the circumstances it could be inferred that defendant, in the exercise of ordinary care, ought reasonably to have foreseen that the practice was liable to result in some injury to a head brakeman although it could not reasonably have anticipated the particular injury which did result or the manner of its occurrence. Where an act is negligent, the person committing it is liable for any injury proximately resulting from it, although he could not have reasonably anticipated that the injury would result in the form or way in which it did in fact happen.[7]

---

[7]Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640.

The fact that plaintiff gave the eleven-pound switch light a hard jerk when he found it had caught on the cab floor, and that the impetus of the jerk when the light suddenly came loose swung him around so as to wrench his back, was not an independent and intervening factor which interrupted the chain of causation between defendant's negligence and plaintiff's injury. At its worst the jerking of the switch light was only a contributing cause. See, Ross v. Duluth, M. & I. R. Ry. Co. 203 Minn. 312, 319, 281 N. W. 76, 80, and 271. We must not overlook that it is immaterial that plaintiff himself may have been negligent in giving the switch light a hard tug, or in failing to use a safer method, since under the Federal Employers' Liability Act the contributory negligence of the plaintiff-employee goes only to a proportionate diminution in the amount of damages and does not bar a recovery for an injury which proximately resulted *in part* from defendant's negligence.[8] No controlling significance is to be attached to the fact that plaintiff interrupted his descent by momentarily standing still on one of the steps while he reached for the switch light. His momentary stop was only a part of a continuous process of unloading both the mail and the switch light, and no break in the chain of causation necessarily occurred.[9]

■ Plaintiff was permitted to introduce in evidence opinion testimony that the custom of carrying small items of L. C. L. freight in the engine cab was not safe and was not good railroading. Defendant in turn produced evidence to show that for many years immediately preceding substantially the same custom had been followed by the employees in carrying small items such as personal belongings, tool boxes, water kegs, and various other articles. This latter

[8]Wilkerson v. McCarthy, 336 U. S. 53, 61, 69 S. Ct. 413, 417, 93 L. ed. 497, 504; Boston & M. R. v. Kyle (1 Cir.) 156 F. (2d) 112; Virginian Ry. Co. v. Viars (4 Cir.) 193 F. (2d) 547; see, Ross v. Duluth, M. & I. R. Ry. Co. 203 Minn. 312, 281 N. W. 76, 271.

[9]We have not overlooked Gill v. Pennsylvania R. Co. (3 Cir.) 201 F. (2d) 718, and other cases cited by defendant as decisive on the issue of negligence. After carefully examining such cases, we conclude that they are not controlling.

custom, inclusive of all of its surrounding conditions and circumstances, in no material manner differed from the custom and the circumstances and conditions involved when plaintiff was injured. There were no collateral facts to confuse the issue. The trial court, however, excluded evidence offered by the defendant to show that over a period of many years immediately preceding there had been an absence of prior accidents from the same cause.

We have held that evidence of an absence of similar accidents from the same inanimate cause are admissible to show that such cause was not dangerous or likely to cause accidents.[10] Here the engine cab, with its steps for ingress and egress, was not defective, but it is alleged that the custom followed made it impractical, if not impossible, for plaintiff to descend from the cab in a safe manner. According to plaintiff's theory, the custom created an unsafe condition whenever a brakeman sought to descend the steps with company mail and L. C. L. packages. Fundamentally there is no difference between cases involving an actual inanimate defect and cases where a customary practice converts a normally safe instrumentality to an unsafe manner of use or to a purpose for which it was not designed. It follows that, when a normally safe instrumentality has been converted by a customary practice to a use or purpose alleged to be negligent, evidence of an absence of prior similar accidents from the performance of the same or similar customary acts, when not too remote and when involving substantially the same conditions, is admissible to show that such customary practice is not dangerous or likely to cause such accidents.[11] Under the circumstances it was prejudicial to exclude evidence of an absence of prior accidents from the same cause.

[10]Doyle v. St. Paul, M. & M. Ry. Co. 42 Minn. 79, 43 N. W. 787; 4 Dunnell, Dig. & Supp. §§ 7053 and 7053a; see, Bergman v. Williams, 173 Minn. 250, 217 N. W. 127.

[11]See, Phelps v. Winona & St. Peter R. Co. 37 Minn. 485, 35 N. W. 273; Bergman v. Williams, 173 Minn. 250, 217 N. W. 127; Hector Const. Co. Inc. v. Butler, 194 Minn. 310, 260 N. W. 496; 1 Shearman & Redfield, Negligence (Rev. ed.) § 59; Fletcher v. Baltimore & P. R. Co. 168 U. S. 135, 18 S. Ct. 35, 42 L. ed. 411; Jackson v. Chicago, M. St. P. & P. R. Co. 238 Iowa 1253, 30 N. W. (2d) 97.

■ Plaintiff's witnesses were also permitted to testify over defendant's objection that the employees had through their union requested defendant to put at the head end of the train a caboose in which company mail and packages could be carried. Defendant, in seeking to rebut such testimony, offered the testimony of its division's superintendent that he had never received any complaints from the employees relative to the practice of carrying company mail and packages in the engine cab or any request for a caboose at the head of the train. We need not pass upon the admissibility of the testimony of plaintiff's witnesses that the employees through their union had complained to the defendant and requested a head-end caboose, since we follow the rule that, where plaintiff is permitted to give evidence on a specific issue, defendant's evidence to the contrary is admissible on the same issue.[12] Under the circumstances it was prejudicial error to exclude the testimony of defendant's division superintendent.

■ All medical experts agreed that plaintiff had a congenital weakness from the failure of a vertebra to form itself completely. There was a sharp conflict in the medical testimony as to whether plaintiff had a herniated disc so as to require a spinal fusion operation. Certain medical witnesses were of the opinion that plaintiff did not have a herniated disc and that he had sustained only a spraining of the muscles of his back and was in no need of a spinal fusion operation. Dr. Metz, who was defendant's chief surgeon at the time of the accident, had examined plaintiff. Before the trial he retired and did not appear as a witness. Over defendant's objection plaintiff testified that when Dr. Metz examined him he orally prescribed a fusion operation.

Plaintiff asserts that such hearsay testimony was competent and admissible as the admission of an agent binding upon his principal since the doctor's statement was made in the performance, and within the authorized scope, of his duties as an agent of the defend-

---

[12]Wright v. Engelbert, 193 Minn. 509, 512, 259 N. W. 75, 77; Scott v. Prudential Ins. Co. 203 Minn. 547, 553, 282 N. W. 467, 470; Maasdam v. Jefferson County Farmers Mut. Ins. Assn. 222 Iowa 162, 268 N. W. 491; see, 1 Wigmore, Evidence (3 ed.) § 15, note 2; Whitney v. Kaliske, 131 Minn. 261, 154 N. W. 1100; 5 Dunnell, Dig. & Supp. §§ 7193, 7202.

ant. The statement of Dr. Metz was not a statement of fact but an expression of his conclusion or expert opinion. It is well recognized that the declaration of an agent to be binding as an admission of his principal not only must be made in the performance, and within the authorized scope, of his duties as defendant's agent but must be a statement of fact as distinguished from a mere expression of opinion.[13] The sharp conflict in the diagnosis and prognosis of the various medical experts herein emphasizes that their statements were opinions and not declarations of fact. This court has heretofore recognized the crucial distinction between statements relating to mere opinion and those relating to fact. Rosenberger v. H. E. Wilcox M. Co. 145 Minn. 408, 177 N. W. 625.[14] It is a distinction designed to preserve in the field of evidentiary proof the relationship between admissibility and trustworthiness, even though the line separating fact from mere opinion may not always be distinct.[15] It was prejudicial error to permit plaintiff to give hearsay testimony of the extrajudicial statement of opinion of Dr. Metz.

Since there must be a new trial, it will be unnecessary to consider certain other assignments of error. The order appealed from is reversed and a new trial is granted.

Reversed.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.

---

[13]New York L. Ins. Co. v. Rankin (8 Cir.) 162 F. 103, 108; Warner v. Maine Cent. R. Co. 111 Me. 149, 88 A. 403, 47 L.R.A.(N.S.) 830, with note; Spinney's Admrx. v. O. V. Hooker & Son, 92 Vt. 146, 102 A. 53; Wert v. Equitable L. Assur. Society, 135 Neb. 654, 283 N. W. 506; Deaton & Son, Inc. v. Miller Well Servicing Co. (Tex. Civ. App.) 231 S. W. (2d) 944; 2 Fletcher, Cyc. Corporations (Perm. ed.) § 734.

[14]We have not overlooked the case of Phillips v. St. Louis & S. F. R. Co. 211 Mo. 419, 111 S. W. 109, 17 L.R.A.(N.S.) 1167, wherein the issue related not to whether decedent was insane but whether defendant had knowledge that decedent was mentally unbalanced. The agent's statement therein related only to the fact of notice and as such statement was held a binding admission upon the defendant as to his knowledge of decedent's insanity.

[15]See, Edmund M. Morgan, *The Rationale of Vicarious Admissions*, 42 Harv. L. Rev. 461.