**FORD MOTOR COMPANY, a corporation, Appellant,**

v.

**Marvin D. ZAHN, Appellee.**

No. 16107.

United States Court of Appeals
Eighth Circuit.

April 16, 1959.

David W. Nord, Minneapolis, Minn.
(G. P. Mahoney, Mahoney & Mahoney

Minneapolis, Minn., on the brief), for appellant.

C. A. Ryan, Brainerd, Minn. (Ryan, Ryan & Ebert, Brainerd, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This is a Minnesota negligence action, in which appellee-plaintiff received a judgment for $26,350 following jury verdict, as damages for loss of his eye occasioned by a defective ash tray in a Ford automobile manufactured by appellant-defendant. Jurisdiction rests on diversity and amount in controversy. At the conclusion of all of the evidence, defendant moved unsuccessfully for a directed verdict; and after trial, moved for judgment notwithstanding the verdict. Following denial of the latter, defendant appealed.

 Since defendant's contention is that, under all the facts and circumstances of record, no submissible case was made, it is well to bear in mind the general rules governing any plea to displace a jury verdict: (1) All disputed fact questions and permissible inferences must be viewed in the light most favorable to plaintiff; (2) The question of negligence is usually for jury determination and it is only in rare situations, where there is no occasion for reasonable men to differ, that the question becomes one of law for the court; and (3) It is only where all or substantially all of the evidence is on one side, that a directed verdict should be entered. See Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 860, 861, and cases cited.

In line with the foregoing, we review the evidence bearing upon plaintiff's right to recover. On April 28, 1956, plaintiff was riding as a passenger in the front seat of a 1956 model Ford automobile that was owned and being driven by Clarence Dailey. The automobile was proceeding westwardly on Highway 218 in the state of Minnesota, at 45 to 50 miles per hour. As the automobile approached a crossroad, plaintiff dropped a lighted cigarette. While plaintiff was attempting to retrieve the same from the floor of the vehicle, with his head down, the brakes of the automobile were applied suddenly and with great force, throwing plaintiff forward and causing his face to come in contact with the dashboard. Dailey, the driver, applied the brakes suddenly in order to avoid a collision with an unidentified automobile which was apparently driven suddenly from the crossroad, directly in the path of the Dailey automobile. Immediately following plaintiff's contact with the dashboard, he realized that his right eye had been injured, as it was paining him and blood and liquid was emerging therefrom. Plaintiff was taken by Dailey to a hospital in St. Cloud, Minnesota, where plaintiff was treated by Dr. W. T. Wenner. The injury to the eye consisted of a penetrating laceration which extended the entire width of the cornea, "roughly half an inch." Surgery was performed by the doctor for the purpose of saving the eye, but despite all efforts and treatment, plaintiff lost all vision in the injured eye.

The Ford automobile was equipped with an ash tray which was located in the center of the dashboard. This tray was found on the floor of the vehicle after plaintiff was injured. When Dailey attempted to replace the tray in the dashboard, he discovered the channels upon which it rested had been bent down, and it was necessary for him to straighten the channels before he could insert the tray. After taking plaintiff to the hospital, Dailey examined the ash tray and for the first time discovered a "jagged" edge on the top right-hand front corner thereof. The tray in question was an exhibit at the trial and was also made available for our inspection. Upon examination, it appears that the upper right-hand corner of the front portion of this accessory is not only sharp, but a small protrusion, described by witnesses as a burr, extends therefrom. Testimony indicated that such a

defect would be occasioned by a dull cutting die. This sharp edge and burr is the defect upon which plaintiff predicates his case.

Upon these facts, the issues as presented to the jury were: (a) defendant's negligence; (b) proximate cause; and (c) plaintiff's contributory negligence. No exceptions or objections were taken to the court's charge. By special interrogatories, the jury found that Dailey, joined as third-party defendant, was not negligent in respect to the matters causing plaintiff's injury.

■ For its first point in support of the basic assignment, defendant contends that plaintiff failed to establish that the projecting corner of the ash tray in fact caused the injury. In the main, defendant points to plaintiff's deposition in which he testified that he "knew I hit my eye on something, and I didn't know at the time what it was." We do not regard this statement as conclusively establishing that plaintiff's eye did not come in contact with the defective ash tray. Fairly considered, the deduction to be drawn therefrom is that plaintiff was immediately unaware of the exact object which produced the injury. But irrespective of the construction that may be accorded the deposition, there was substantial evidence in the trial to justify submission of this issue to the jury. Plaintiff's testimony was: "(w)hat my eye actually hit there was the ash tray" and "I knew my eye came in contact with the ash tray." Then we have the circumstance of the ash tray being knocked to the floor and its channels bent downward, from which the reasonable inference can be drawn that contact had been made therewith. To this may be added Dr. Wenner's testimony that the injury was caused by a sharp object striking the eye; that the eye injury was not a tearing or bruising, but a clear-cut wound; that it was a penetrating, clean, sharp wound, a cut across the eye from side to side; and that the "jagged" upper righthand corner of the ash tray was an object "such as I had in mind * * * as striking the eye or injuring the eye."

In the absence of any showing that there was another sharp, projecting accessory or device on the dashboard of the automobile, it is obvious, as the trial court ruled, that "the question of causation was one wholly within the province of the jury." Any inconsistency or discrepancy between plaintiff's testimony as given on deposition and at trial, could only affect his credibility, and was properly a matter for the triers of the facts to consider.

The next contention urged upon us presents these meritorious questions: Was the defendant negligent? If so, was its negligence the proximate cause of plaintiff's injury? As to the duty owed to plaintiff, defendant concedes with candor that under the rule promulgated by the landmark case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916, F. 696, "it was so placed with respect to the plaintiff or anyone in his situation that it owed him a duty to use reasonable care in the design and manufacture of its product." It is also recognized by defendant that this is the law in Minnesota. See Heise v. J. R. Clark Company, 245 Minn. 179, 71 N.W.2d 818. We do not understand that defendant seeks to escape the force of this rule on the theory that the sharp edge of the ash tray with the projecting burr did not constitute a defect—rather, its position is that the inspection made by it, particularly in view of the nature, position, and size of the defect, and the forseeability of injury resulting therefrom, constituted the exercise of reasonable care on its part.

■ By force of law there is imposed upon the manufacturer of an article for sale or use the duty to exercise reasonable care to prevent defective conditions caused by a miscarriage in the manufacturing process. This duty requires reasonable skill and care in the process of manufacture and for *reasonable inspection or tests* to discover defects. Harper & James, Law of Torts, Vol. 2, § 28.11; Restatement of Torts § 395; and see, Egan Chevrolet Co. v. Bruner.

8 Cir., 102 F.2d 373, 122 A.L.R. 987; MacPherson v. Buick Motor Co., supra, and cf. Ellis v. Lindmark, 177 Minn. 390, 225 N.W. 395; Lovejoy v. Minneapolis-Moline Power Implement Co., 248 Minn. 319, 79 N.W.2d 688.

Applying this general rule to our facts, it appears that the evidence leaves doubt as to whether the subject ash tray was actually inspected. From the testimony of Mr. Van Scoy, the quality control manager for defendant, who was stationed at the Twin City Assembly Plant in St. Paul, where Dailey's automobile was assembled, we find that defendant followed certain practices designed to insure inspection of automobiles. Ash trays were inspected at various stages—in his words they passed "through roughly seven inspectors," but the same witness also testified that insofar as the face of the ash tray was concerned (the portion containing the instant defect) the inspection was a sampling operation. "We don't look over each one individually." This witness stated that the exposed faces of the ash trays are supposed to have rounded corners, and that they were so constructed to prevent injuries. Regardless of the procedure followed and practiced by defendant, the fact of the matter is the defect was not discovered, although, according to Mr. Van Scoy it was readily discoverable. Referring to the defect, he testified: "I can feel it very easily with my finger. I have done so, both out in the corridor yesterday and here on the witness stand today. * * * Apparently every one of our inspectors missed that. * * * If each ash tray had been inspected, this defect that we are concerned with here could possibly have been discovered."

As to whether reasonable care was exercised under the circumstances here, we are mindful of the recognized elements which go to make up actionable negligence. On this subject, Prosser states in his work on Torts, Second Edition, page 119: "Negligence is a matter of risk—that is to say, of recognizable danger of injury. It has been defined as 'conduct which involves an unreasonably great risk of causing damage,' or, more fully, conduct 'which falls below the standard established by law for the protection of others against unreasonably great risk of harm.'" See also, Lovejoy v. Minneapolis-Moline Power Implement Co., supra, at page 693; Harper & James, The Law of Torts, Vol. 2, § 16.9, pp. 928, 929; and 65 C.J.S. Negligence § 2(d). Relying on the foregoing test, the defendant insists that a reasonably prudent person was not required to anticipate or foresee the unusual occurrence and resulting injury to plaintiff; that the harm to be anticipated from the defect was perhaps a "cut finger" or "snagged clothing," and that since the extent of the foreseeable risk was minimal, the argument follows that the inspection as made, fully complied with the standard of reasonable care so as to completely insulate defendant from liability.

We do not subscribe to the view that the foreseeable risk attending the defective ash tray was minimal and necessarily limited to a lacerated finger or comparable injury. While the risk of danger was perhaps not as great as that which might inhere in a defective wheel or a defective steering mechanism, nevertheless, the fact remains that plaintiff *did* suffer a serious injury, and the jury could properly consider as a circumstance that in this era of fast moving automobiles, emergencies arise frequently which require the sudden application of brakes which in turn throw the occupants of the automobile forward and against the dashboard. The record reveals that defendant was fully conscious of the necessity of guarding against injuries resulting from such occurrences. Mr. Van Scoy testified: "[s]afety of the automobile is a most important factor. We are conscious of the types of use of the automobile by the general American public. Whether it is dangerous to have sharp objects in the dash of the car would depend upon what the part was to be used for. I know that the children constantly ride in the front seat.

of these cars. I would imagine there would be occasions when brakes are applied suddenly and children and other persons are thrown forward in cars. That would naturally be true in the type of traffic that we have today. *That is why it is important that there be nothing there that would cause injury if such occurrences take place.*"

Without further elaboration of the point, it is our considered opinion that the question of whether defendant exercised reasonable care in making inspections to discover the defective ash tray, was, under all the pertinent facts and circumstances, properly one for the jury to resolve.

The issue of proximate cause presents no serious problem. In the oft cited case of Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N.W. 640, 641, the Minnesota Supreme Court clarified any doubt as to the law on the subject in that jurisdiction in these words:

"[T]he law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

This pronouncement has been consistently followed. See Fjellman v. Weller, 213 Minn. 457, 7 N.W.2d 521, 529; Saturnini v. Rosenblum, 217 Minn. 147, 14 N.W.2d 108, 112, 163 A.L.R. 294; Albertson v. Chicago, M., St. P. & P. R. Co., 242 Minn. 50, 64 N.W.2d 175, 42 A.L.R.2d 1044; Lund v. Minneapolis Street Railway Co., 250 Minn. 550, 86 N.W.2d 78, 81.

■ Tested by the foregoing rule, it is clear that the evidence presented a jury issue as to whether the negligence of defendant was the proximate cause of plaintiff's injury. On this question, defendant argues that it was not required to anticipate that an automobile would suddenly dart out from a side road on to a highway in front of the Dailey automobile at the precise time that plaintiff was in a bent position attempting to retrieve a cigarette, thereby making it possible for his face to come in contact with the dashboard. Stated in this manner, it may seem that the circumstances surrounding and attending the occurrence were unusual, but the question cannot be determined on that basis alone. If the negligence was such that the defendant, in the exercise of ordinary care, ought to have anticipated that such negligence was liable to result in injury to others, then the defendant is liable for any injury proximately resulting therefrom, although defendant could not have anticipated the particular injury which plaintiff suffered. As we have already seen, defendant was conscious of the safety factor in the designing and construction of automobiles. In addition to the testimony of Mr. Van Scoy, which has previously been emphasized, he further stated: "I am conscious of the common occurrence of passengers being suddenly catapulted forward. I know that it is a matter of concern so far as children and other passengers are concerned. * * * *That is the reason that it is important when we assemble the dash portion of the car that there would be nothing there that would cause injury if such occurrences take place.*" Possessing such knowledge, it is scarcely debatable that defendant, in the exercise of ordinary care, should have anticipated that the defective ash tray was apt to result in injury to passengers in the automobile. That being true, there was a jury question on the issue of proximate cause.

■ Although failing to raise the point specifically in its motions preparatory to this appeal, defendant contends

**734**

that the negligence of the unidentified driver of the car, which caused Dailey to apply his brakes suddenly, constituted an effective intervening cause. We have considered this point, so closely allied to the question of proximate cause, and likewise find it without merit. Here again, the test is foreseeability. If the acts of third persons, although contributing to the ultimate injury and damage, might reasonably have been anticipated, then such acts do not interrupt the connection between the original negligence and the injury.[1]

The judgment is affirmed.

---

1. See Eichten v. Central Minnesota Cooperative Power Ass'n., 224 Minn. 180, 190, 28 N.W.2d 862, 869, reviewing Minnesota law on this subject. There, the Supreme Court of that jurisdiction, in holding that "foreseeable intervening forces are within the scope of defendant's original fault", stated:

"In accordance with this doctrine we have held that one is bound to anticipate and provide against what usually happens and what is likely to happen. As stated in Ferraro v. Taylor, 197 Minn. 5, 7, 265 N.W. 829, 831: '* * * The rule seems to be well established that if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury.' "

See also, Albertson v. Chicago, M., St. P. & P. R. Co., 242 Minn. 50, 64 N.W.2d 175, 180, 42 A.L.R.2d 1044; Fjellman v. Weller, 213 Minn. 457, 7 N.W.2d 521, 529; Ellis v. Lindmark, 177 Minn. 390, 225 N.W. 395, 396.