# DONALD SMITH AND ANOTHER v. THE KAHLER CORPORATION, INC.

211 N. W. 2d 146.

September 14, 1973—No. 43856.

*Brown & Bins* and *Frederic N. Brown,* for appellant.

*Walbran & Walbran, John P. Walbran,* and *Leroy O. Tengwall,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Gillespie, JJ.

ROBERT B. GILLESPIE, JUSTICE.*

Defendant appeals from a judgment in favor of plaintiffs and

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

from the trial court's order denying defendant's motion for a new trial.

Plaintiffs, husband and wife, instituted an action against defendant for damages resulting from plaintiff Loretta Smith's falling to the floor of a cocktail lounge known as the Hemisphere Room, owned and operated by defendant. A jury found defendant negligent and found defendant's negligence to be a direct cause of Mrs. Smith's injury. The jury also found Mrs. Smith (hereinafter referred to as plaintiff) negligent, but found her negligence was not a direct cause of her fall. Defendant corporation contends on appeal that (1) there was not a sufficient factual basis for inferring which of several possible causes produced plaintiff's injury; (2) the dim lighting of the cocktail lounge, standing alone, did not constitute negligence; and (3) the negligence of plaintiff was a direct cause of her fall.

The trial court denied defendant's alternative motion for a new trial or judgment notwithstanding the verdict. It did, however, grant a motion for new trial on the issue of damages only unless plaintiffs consented to a remittitur. They agreed to the remittitur and agreed to accept a total of $29,000 rather than the $49,050 awarded as damages by the jury verdict.

Plaintiff was injured in a fall in a cocktail lounge owned and operated by defendant. On the night of the accident, Mr. and Mrs. Smith and two friends had been escorted by the hostess to a table near the bandstand in the northeast corner of the room. Finding this too noisy, they were escorted to a table just inside the door in the southwest corner of the room, retracing the steps they had taken earlier. Shortly after they were seated, the friends decided to dance and walked to the dance floor along an aisle which cut diagonally across the room. This aisle was one of three routes arranged between the tables by defendant for access to the dance floor and the shortest route from plaintiff's table. Upon the return of their friends, the Smiths headed toward the dance floor, along the same diagonal path, walking single file, plaintiff walking in front. A few feet from their table, plaintiff,

as she was walking behind a chair, caught her foot and fell around that chair. She testified that she had been walking toward the light on the bandstand and admitted that she had not been looking at her feet at the time of her fall.

The Hemisphere Room was then crowded to near capacity, with more than 100 persons seated around 30 small tables closely distributed throughout the room. Lighting was provided by one 7-inch candle enclosed in a white frosted glass cylinder 10 inches high on each table. There was no overhead lighting except that over the bandstand and the bar. The tables were made of dark material and the chairs of black wood and were set on a predominantly black carpet. It was stipulated by the parties that there was one-tenth to one-twentieth candlepower at floor level around the chairs and tables. Plaintiff introduced expert testimony indicating that the candle would cast a shadow in a dark, cone-shaped area around the table. There was received into evidence excerpts from the handbook of the Illuminating Engineering Society which recommend an illumination of three candlepower for cocktail lounges. Plaintiff's expert testified that the dark carpet would absorb nearly all the light and no contrast would occur between carpet and chairs. A chair of the type used in the lounge was introduced into evidence. The chair legs flared outward about 6 inches from top to bottom, causing them to extend about 3 inches beyond the back of the seat. The hostess had patrolled the area just prior to plaintiff's fall to see that chairs were in place and to generally supervise the area and had found nothing wrong.

The trial court instructed the jury regarding negligence, direct cause, the duties of possessors of land to business visitors, and the duty of a business visitor to use reasonable care for his own safety. The court also instructed regarding the violation of a statutory duty. Regarding direct cause, the court instructed:

"A direct cause is a cause which had a substantial part in bringing about the accident either immediately or through happenings which follow one after the other. A direct cause is not

necessarily the only cause or the sole cause. It is a cause which had a substantial part in bringing about the accident."

■ Defendant contends that the facts adduced at the trial did not furnish sufficient basis for inferring which of several possible causes produced plaintiff's fall. We agree that verdicts cannot be based upon mere speculation or conjecture, as distinguished from real deduction. Where the entire evidence sustains, with equal justification, two or more inconsistent inferences so that one inference does not preponderate, the complainant has not sustained the burden of proof on the proposition which alone would entitle him to recover. Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. 2d 225 (1953) ; E. H. Renner & Sons, Inc. v. Primus, 295 Minn. 240, 203 N. W. 2d 832 (1973). Here, we have plaintiff claiming that she tripped on the bottom flange of a chair. She testified that as she walked along the dark aisle: "I was walking in back of the chair"; "just all to once I caught my foot and just fell to the floor * * *"; and "I was falling around a chair like that." There was no categorical testimony that she caught her foot on the chair leg. Neither was there any evidence that she caught her foot on any other object. Defendant's hostess had just checked the aisle and found nothing on the floor. No other evidentiary explanation was offered for the cause of the fall. The legs of the chair did protrude behind the seat. Plaintiff was walking behind the chair when she tripped, and there was no other obstruction to trip her.

"* * * Circumstantial evidence which justifies an inference in support of the verdict upon the issue of negligence is adequate to sustain the verdict, even though it may justify other conflicting inferences, if the supporting inference reasonably outweighs and preponderates over the other conflicting inferences and theories." Knuth v. Murphy, 237 Minn. 225, 230, 54 N. W. 2d 771, 775 (1952).

It is for the jury to draw the inferences and not this court. Gard-

ner v. Coca Cola Bottling Co. 267 Minn. 505, 127 N. W. 2d 557 (1964).

On the basis of the circumstances surrounding the incident, the jury was entitled to infer that the fall was the result of plaintiff's tripping on the chair. There was no other preponderating inference available. Burdick v. Bongard, 256 Minn. 24, 96 N. W. 2d 868 (1959) ; Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. 2d 30 (1956).

■ Defendant further contends that the dim lighting of the cocktail lounge, standing alone, did not constitute negligence. The trial court properly submitted to the jury Minn. St. 157.05, subd. 1, which provides:

"Every * * * place of refreshment shall be properly plumbed, lighted, and ventilated and shall be conducted in every department with strict regard to the health, comfort, and safety of the guest; provided, that such proper lighting shall be construed to apply to both daylight and illumination, * * *."

It was for the jury to determine whether the lighting was "proper." The evidence is clearly persuasive that the premises were lighted far below acceptable standards. The jury could find that the dim lighting created a dangerous condition. Jewell v. Blanchett Investment Co. 199 Minn. 267, 271 N. W. 461 (1937) ; Gustafson v. Arthur L. Roberts Hotel Co. 194 Minn. 575, 261 N. W. 447 (1935). Where a statute imposes on a person a specific duty for the protection or benefit of others and he neglects, without justification or excuse, to perform such duty, he is liable to those for whose protection or benefit it was imposed for any injuries of the character which the statute was designed to prevent proximately caused by his neglect. See, Lavalle v. Kaupp, 240 Minn. 360, 61 N. W. 2d 228 (1953).

Revis v. Orr, 234 N. C. 158, 66 S. E. 2d 652, 28 A. L. R. 2d 609 (1951), the only case cited by defendant as upholding its contention that lack of illumination alone is not negligence per se does not so hold. In that case, the plaintiff, who had fallen on an over-

turned chair on a dance floor, was nonsuited and the Supreme Court of North Carolina affirmed, stating that "there is no evidence * * * that the defendant knew, or in the exercise of ordinary care should have known, that the chair was lying where it was." The court did state that the plaintiff's case was not strengthened by evidence of dim lighting as the plaintiff and her witnesses testified that there was sufficient light for her to "see the people and objects around on the floor" and "it was light enough to have read a menu." 234 N. C. 161, 66 S. E. 2d 654, 28 A. L. R. 2d 612.

In the instant case, defendant was aware of the inadequate lighting in the premises which it was its duty to make reasonably safe for plaintiff as a business visitor, and should have known by exercise of reasonable care that the lighting provided did not meet the statutory standard of "proper" lighting. The jury was warranted in finding that failure to meet such a standard was negligence.

■ Defendant invited plaintiff to use its premises as a business visitor, Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. 2d 892 (1954), thereby owing to her an affirmative duty to protect her not only from dangers known to defendant but also from those which with reasonable care it might discover. Berry v. Haertel, 284 Minn. 400, 170 N. W. 2d 558 (1969); Sanders v. Boulevard Del., Inc. 277 Minn. 199, 152 N. W. 2d 132 (1967). The lack of proper lighting coupled with the circumstances prevailing—i.e., dark rugs, black chairs, protruding chair legs—all contributed to the creation of a dangerous situation which the jury had the right to conclude was negligence which directly caused plaintiff to trip and fall.

■ Defendant also contends that plaintiff was found to be negligent and that, contrary to the verdict of the jury, such negligence was a direct cause of the fall and the injuries sustained. The jury was instructed that "[a] business visitor is * * * under a duty to exercise reasonable care for his own safety." The court informed the jury that defendant "claims * * * that

[plaintiff's] fall and resulting injuries were a direct result of her own negligence." By its verdict, the jury found that plaintiff was negligent. From the evidence this verdict must be predicated either on her failure to exercise due care for her own safety in walking through the aisle or her failure to use an alternative aisle in walking to the dance floor.

Plaintiff testified that she did not look at, or in the vicinity of, her feet just before she fell. The jury may have concluded that her failure to look was not an exercise of due care. There is no other evidence of any unusual or careless activity upon her part as she proceeded down the aisle. Defendant's counsel argued to the jury that plaintiff failed to exercise due care for her own safety in failing to follow the same aisle to the dance floor that she used in her initial entry into the lounge, and the jury may have found that plaintiff was negligent in failing to use that aisle.

Whether an actor's negligence is a direct cause of an accident is usually a question for the jury to decide. This court has consistently held that causation, like negligence itself, is a fact issue for the jury except when the facts are undisputed and are reasonably susceptible of but one inference. Jorgensen v. Hawton, 281 Minn. 370, 375, 161 N. W. 2d 676, 680 (1968). In Seivert v. Bass, 288 Minn. 457, 466, 181 N. W. 2d 888, 893 (1970), our court stated:

"* * * Ordinarily, that issue [i.e. proximate cause] is for the jury, and its determination must stand unless manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict. It is only in those cases where the evidence is so clear and conclusive as to leave no room for differences of opinion among reasonable men that the issue of causation becomes one of law to be decided by the court."

Here, the jury may well have concluded that plaintiff's failure to look at or in the vicinity of her feet was not a substantial factor in bringing about her fall. The room was dark, and the jury could determine that she was unable to see the floor or her

feet as she walked toward the dance floor; therefore, her failure to look at something she could not see did not substantially contribute to her tripping on the chair under the dangerous circumstances created by the defendant. The jury may have decided that plaintiff had a right to assume that an aisle provided and offered by defendant as a way of access to the dance floor would be free of hazard and that her failure to look at her feet was only an incident to and did not play a substantial part in bringing about her fall. It is not for this court to say as a matter of law that plaintiff's failure to look at the dark floor under the prevailing surrounding circumstances was a direct cause of the plaintiff's fall. Neither can we determine that the jury was not justified (if they found that plaintiff was negligent by reason of her selection of route to the dance floor) in determining that such negligence was not a substantial factor in causing her fall. She followed a route she knew was used by other customers with the knowledge of defendant. The other aisles were likewise dark and crowded, and the jury could decide that the selection of route, even though negligent, did not contribute to the circumstances of her fall.

"It is not our function to determine on what theory the jury arrived at its verdict. In reviewing the findings, we need only examine the record to decide whether the verdicts are consistent on any theory." Nihart v. Kruger, 291 Minn. 273, 276, 190 N. W. 2d 776, 778 (1971).

■ Defendant contends that the court's refusal to instruct the jury on concurring cause, as set forth in Minnesota Jury Instruction Guides, Instruction 141, was error. We do not agree that prejudicial error resulted from the court's failure to recite to the jury the following: "There may be more than one direct cause of an accident. When the effects of negligent conduct of each of two or more persons actively work at substantially the same time to cause the accident, each may be a direct cause of the accident." See, Jury Instruction Guides, Instruction 141. It is not improper for the trial court to give Instruction 141 where

each party charges the other with negligence directly causing an accident, and in the case before us the court might well have granted defendant's request to so instruct the jury. However, we have examined the record closely, including the opening statements and closing arguments of counsel and the court's instructions. We have found nothing therein to justify defendant's contentions that the jury believed that after they had assigned causation to defendant's negligence they could not also assign causation to plaintiff's negligence, or that the failure to give Instruction 141 resulted in the jury's assuming that there could be only one direct cause of the accident.

In his instructions to the jury, the court set out the claims of the parties as follows:

"It is the plaintiffs' claims that Mrs. Smith was injured as a direct result of the negligence of the defendant Kahler Corporation in the manner in which they lighted and furnished the Hemisphere Room. The Kahler Corporation denies this allegation and claims in its answer that Mrs. Smith's fall and resulting injuries were a direct result of her own negligence * * *."

In giving the definition of direct cause, the court pointed out that "[a] direct cause is not necessarily the only cause or the sole cause." The court also submitted a special verdict to the jurors, telling them to answer the questions as indicated on the verdict form and adding, "[N]o matter how you answer the first five questions about negligence and direct cause and any apportionment, if that question becomes appropriate, you must answer the last two questions about damages." In its verdict, the jury answered "yes" to both questions: (1) "Just before and at the time Mrs. Smith fell, was the Kahler Corporation negligent?" and (2) "Was such negligence a direct cause of the fall?" To question (3) "Just before and at the time Mrs. Smith fell, was she negligent?" the jury answered "Yes." To question (4), "If the answer to question no. 3 is yes, was such negligence on her part a direct cause of the fall?" the jury answered "No." Question (5) was designed to compare the negligence of the two

parties which contributed to the accident, thereby calling attention to the fact that the parties' negligence should be apportioned if the jury found each was negligent and also found that such negligence was a direct cause of the fall.

There was no ambiguity or equivocation in the court's instruction as to the respective claims of the parties. The questions asked in the special verdict focused the jury's attention upon the court's specific instructions as to negligence and direct cause.

This court in Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. 2d 793, 798 (1954), and again in Manion v. Tweedy, 257 Minn. 59, 64, 100 N. W. 2d 124, 128 (1959), stated:

"* * * [T]he charge of the trial court must be viewed in its entirety and from a practical and commonsense point of view. The trial court is allowed considerable latitude in the language used, and a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient."

See, Pogalz v. Miller, 290 Minn. 411, 188 N. W. 2d 877 (1971).

As stated, the trial court fairly and correctly instructed as to negligence and direct cause, the specific and applicable law required to knowledgeably answer the special verdict questions presented to the jury. Nothing in the instructions gave the jury an erroneous conception of the compelling principle of law. Though it would be preferable to instruct in cases like this one with regard to the meaning of concurring cause, we have found nothing in this record to prejudice the jury in its consideration and application of the law of direct cause as it affected either party. See, Pogalz v. Miller, supra.

■ Defendant has complained that the trial court erred in refusing to allow defendant's witness to answer the following question: "Now, from the time you started working in October

of 1961 to the time that you observed Mrs. Smith on the floor on the night of August 9th of 1969, had you had any of your customers fall in that area?" The court held that there was insufficient foundation shown to qualify the witness. We agree with the defendant that the objective of the inquiry was material to the issue of the case. When a normally safe instrumentality has been converted by a customary practice to a use or purpose alleged to be negligent, evidence of an absence of prior similar accidents from the performance of the same or similar customary acts, when not too remote and when involving substantially the same conditions, is admissible to show that such customary practice is not dangerous or likely to cause such accidents. Albertson v. Chicago, M., St. P. & P. R. Co. 242 Minn. 50, 57, 64 N. W. 2d 175, 181 (1954); McCarty v. Village of Nashwauk, 282 Minn. 262, 164 N. W. 2d 380 (1969); 13B Dunnell, Dig. (3 ed.) § 7053a.

We have carefully reviewed the record as it relates to defendant's complaint and we are satisfied that the trial court did not abuse his discretion in excluding the proffered testimony. Exclusion of evidence for lack of foundation rests primarily in the discretion of the trial court and its determination will not be disturbed unless practical justice requires otherwise. Hiedeman v. Hiedeman, 290 Minn. 210, 187 N. W. 2d 119 (1971).

After objection to the question was made, the trial court held an in-chamber discussion with counsel and made the following observation:

"I think the problem that we have is the foundation problem and she hasn't clearly testified yet that there is a record maintained of all falls, that she has checked the record and that she has determined the number of falls that there might have been from any cause and then you get down to the falls that resulted from the chair design or the lighting. The question as it now stands that I would sustain the objection on is as to foundation because she testified they were reported to her but she hasn't testified that there is a record kept or that there is an accident file, in other words. She hasn't testified whether she has checked

the accident file if there is one during the period of time that she has worked there to determine this information. If she says all that, then I would overrule the objection because Albertson versus Chicago etcetera says it is prejudicial error to exclude evidence of the absence of prior accidents from the same causes and we don't want to have prejudicial error. However, you have to be able to get it down to those inanimate causes of chair design and lighting. It is arguable whether the chairs were out of place or not and all that. That, you know, is a question for the jury. I am sure that both sides are going to argue that the chairs weren't all just arranged the same way all the time. However, it isn't the arrangement of the chairs, as I understand it, so much as it is the design of the chairs that the plaintiff complains of and for that reason I would allow this question to be answered if she has enough foundation."

Thereafter, defendant made no offer of proof of any accident file, asked no further questions to establish foundation, and made no effort to pursue the matter. Defendant was apparently satisfied that a proper foundation could not be laid for the admission of the testimony. We find no error in the court's ruling.

We affirm.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.