BUTLER-RYAN COMPANY v. EZRA T. WILLIAMS and Others.[1]

November 29, 1901.

Nos. 12,727—(96).

Towing—Negligence.

A steam tug is bound to bring to the performance of the duty it assumes reasonable skill and care in everything relating to the work. The want of such skill and care is negligence, and the owner of the tug is liable for the full measure of the consequences.

Same—Verdict Sustained by Evidence.

*Held,* in an action brought by plaintiff, a corporation, to recover damages for injuries done to certain piling, which, as a government contractor, it had properly placed in a canal in order to protect permanent

[1] Reported in 88 N. W. 3.

work in process of construction, that there was evidence sufficient to warrant a finding by the jury that a steam tug owned by defendants negligently and improperly managed a loaded scow which it was towing, and that this negligence was the predominating efficient cause of the injury to the piling, although the injuries were the immediate acts of another vessel, not belonging to defendants; and that the evidence was sufficient to justify the jury in finding that this vessel was not negligently handled or managed.

## Proximate Cause—Charge to Jury.

Held, that the definition of proximate cause, as given to the jury by the court in its charge, was sufficiently complete and comprehensive, and that the court did not err when it declined to give certain instructions proposed by defendants' counsel bearing upon this question.

Action in the district court for St. Louis county to recover $2,004, and interest, damages for collision of the steam vessel Grover with plaintiff's piling and construction work in the Duluth ship canal caused by the negligence of defendants' tug-boat and tow. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $1,687.87. From an order denying a motion for judgment in their favor notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Baldwin & Baldwin* and *D. J. Schuyler*, for appellants.

*Searle & Spencer* and *How, Taylor & Mitchell*, for respondent.

COLLINS, J.

The canal which connects Duluth harbor with Lake Superior is from twelve hundred to fourteen hundred feet in length and two hundred five feet in width, being sufficiently wide for vessels to meet and pass each other as they go in and out. In October, 1899, the plaintiff company was engaged in building a pier on the north side of this canal under contract with the United States, and to facilitate and protect its construction work clusters of piles had been driven along the north line of the canal at proper intervals. This piling reduced the channel to about one hundred sixty-five feet in width, but it was still wide enough to permit the passage of vessels in the manner before stated. At this same time defendants were government contractors, engaged in dredging the harbor, the process being to load the dredged material upon scows,

which were towed, one at a time, by steam tugs, through the canal, to an outside dumping station, and, upon being emptied, were returned in the same way to the harbor.

On the morning of October 13, while the plaintiff was prosecuting its work on this pier, the steamer Grover, a wooden vessel, two hundred seventy-two feet long, and heavily loaded, approached the outer entrance to the canal. It was preceded by a small tug, named the Superior, at a distance of about one hundred feet. About the same time the tug Williams, owned by defendants, was towing a scow filled with harbor dredgings through the canal towards the dumping station; and a short distance behind the Williams was another tug, called the Martin, also owned by the defendants, with another loaded scow in tow. This scow was eighty-two feet long, twenty-seven feet wide, with square corners strapped with iron. It was attached to the tug by what is known as a "bridle," the length of the line being in dispute at the trial of this case.

The evidence tends to show that the Martin reached the inner entrance to the canal a short time before the Grover reached the outer. The current through the canal, which current is quite variable, was setting into the harbor from outside at the rate of four or five miles an hour, and, of course, its effect was perceptible inside the harbor for some little distance from the end of the canal. It appeared that when the Martin, with its tow, struck this current, its speed was thereby slackened to about one mile per hour, and there was testimony from which the jury could find that before entering the canal the Grover had reduced its speed to about two miles an hour, and then proceeded through the same as slowly as she could and at the same time preserve control of her movements. It was undisputed that when the scow approached the canal, and was affected by the current, it commenced to sheer from side to side to such a degree that it came very near striking both margins of the canal, and that the tug had very little control over these movements.

The Grover, while in the canal, passed the Williams, its tow, and the Martin in safety, but when approaching the scow, which was

84 M.—29

some distance in the rear of the latter tug,—about midway of the canal,—was put in such imminent danger by the sheering of the scow that its officers were compelled intentionally to direct their vessel against plaintiff's piling in order to escape a collision, thereby breaking it down, and damaging it in quite an amount. It seems to be conceded that it was absolutely necessary for the Grover to escape the threatened collision with the heavily-loaded scow, if possible, and that the only way to do it was to run into the piling. This action was brought against defendants, as owners of the Martin and the scow, to recover the damages thereby caused. The verdict was for the plaintiff, and this appeal is from an order denying defendants' motion for a new trial.

The complaint alleged, and the case was tried upon the theory, that the Martin was of insufficient capacity to do the work in which it was engaged; was improperly and negligently managed at the time; that the scow was improperly attached to it, and was negligently managed; and that this caused the sheering from one margin of the canal to the other, whereby the Grover was put in great jeopardy, and compelled to run into the piling,—the various acts of commission and omission on defendants' part being, it was claimed, the proximate cause of the injury to plaintiff's property. The contention of the defendants was that the tug was of sufficient capacity, properly equipped and managed; that the scow was attached to the tug and was handled in an ordinary and proper way; that both tug and scow were navigated in the customary manner; and that the negligence of the officers of the Grover was the proximate cause of the injury to the piling. The precise charge of mismanagement made against these officers was that they negligently caused their vessel to steam into the canal with full knowledge of the situation of the Martin and its tow.

On the argument in this court the discussion was practically confined to two propositions:

1. That there was no evidence which would sustain a finding that the tug Martin was of insufficient capacity to handle the loaded scow, or that the latter was improperly or negligently

managed by reason of a towline of unsuitable length, or in any other manner.

2. That, if there was negligence in any of these matters, the proximate cause of the injury to plaintiff's property was the improper and negligent management of the Grover in respect to entering the canal.

We have examined the evidence very carefully, and are clearly of the opinion that the jury was at least justified in finding that the towline was of improper length, that the scow was negligently managed, and that with proper handling by a tug of sufficient capacity the motion from side to side could have been reduced so as to be harmless, if not entirely done away with. In considering this testimony it must not be forgotten that the canal was of sufficient width to permit the passing of vessels in safety under ordinary circumstances, and that the officers of the Grover had a right to rely upon this fact when they approached the entrance for the purpose of going through into the harbor.

It was in evidence that when the Martin observed the Grover approaching the lake end of the canal three blasts of her whistle were given, but the jurors were justified in finding that this was simply a cautionary or "check" signal, and nothing more, although it was claimed on the argument here that three blasts of the whistle meant danger, and were of such import as to require the officers of the Grover to stop their vessel, and remain outside until the Martin and its tow emerged. The officers in charge of the Grover deny having heard any such signal, but this is of no consequence, for the Grover actually reduced her speed, and immediately afterward, as the preferred vessel, having the right of way, because of the current in the canal, gave one blast of its whistle, which, in the language of vessel-men and under the rules of navigation, notified the Martin that it would take the starboard side of the canal. To this the Martin promptly replied with one blast, thus informing the Grover that its notice was understood, and that the Martin would take the port side. It advised the Grover to proceed on its course.

The officers of the Martin concede that these signals were exchanged after its three blasts of the whistle were given. The

new signals superseded the old, and the information conveyed by the latter was rendered of no consequence, no matter what may have been its import originally. The Grover then steered to starboard, and the testimony was that the officers in charge did not discover the sheering of the scow until they were in such a position with respect to the canal that they could not avoid entering and attempting to pass. If this testimony was entitled to credence, the question of negligence on the part of the officers of the Grover when entering the canal was clearly for the jury.

It was admitted by the captain of the Grover that he saw the tug and its tow when he was out in the lake a quarter of a mile, but that he was negligent is not to be determined from this fact or admission. Mere knowledge that the tug and the scow were approaching, or were actually in, the canal, was not sufficient to put him on guard as to the only danger which threatened his vessel, namely, the motion of the scow itself. Notice or knowledge of the approach of the tug or scow was not notice or knowledge that the latter was sheering from one side to the other of the canal, so as to endanger passing vessels; and the officers of the Grover had no information, according to the testimony, of this condition, until their vessel was in such a position that they could not recede. It was shown that immediately after being placed in this dangerous position the Grover gave a well-known danger signal of five or six short blasts of its whistle, and to this the Martin made no response. Its officers did not stop their vessel, nor were they able to control the scow, or to prevent its sheering. The tug Superior barely avoided a collision with it, and the Grover had the narrow margin of from two to six feet to escape in, and then only by crashing into the piling. Had the scow struck the Grover fairly, the latter would have been sunk, in all probability.

As we have before said, there was abundant evidence concerning the management of the tug, the length of the towline, and the manner in which such scows are usually handled, to justify the conclusion that the Martin or the scow, or both, were managed and handled in a negligent manner. To hold this we are not required to determine or to state precisely what, according to the evidence, was the exact cause of the sheering. That under proper

management such a result was unnecessary was shown by competent testimony, and it stood uncontradicted that the Williams (also belonging to defendants), with a loaded scow in tow, and just ahead of the Martin, steamed out through the canal, and met and passed the Grover without the slightest sheering of its tow.

The degree of care and skill to be exercised by a tug when engaged in the business of towing is thus stated: A steam tug is bound to bring to the performance of the duty it assumes reasonable skill and care in everything relating to the work until it has been accomplished. The want of either in such a case is negligence, and the owner of the tug is liable for the full measure of the consequences. The Margaret, 94 U. S. 494. The rule as to skill and care was stated by the court in its charge as follows, no objection being made thereto by defendants' counsel:

"The Duluth canal, at the time in question, was designed for the passage of craft through its waters in opposite directions at the same time. It was therefore the duty of defendants, when they entered the canal, to have exercised ordinary care to so manage, control, and confine the movements of their tug and scow as to avoid injury to plaintiff's works, either by forcing into or upon them incoming vessels which they might reasonably have anticipated as liable to meet, or otherwise, and they should have provided such amount of power to control the movements of the scow, and adopted such method of attachment to the tug, as, under all the surrounding circumstances, this degree of care would require. It was their duty to exercise a like degree of care to so manage and control their scow while in the canal as to leave a passageway unobstructed of sufficient width to permit the passage in safety of all incoming craft which they might reasonably have anticipated as liable to meet."

Under this accepted rule the jury was justified by the evidence in finding that the officers of the tug, who were defendants' agents, were negligent on this occasion. This is true although it might be found that those in charge of the Grover were also negligent. In such a case we should have simply concurring negligence, in which an injured party might have recourse upon either of the negligent parties for his damages.

At the trial below, defendants' counsel insisted that the negligence of the officers of the Grover was the proximate cause of the

injury to the piling, and therefore recovery could not be had against the owners of the Martin. Based upon this contention is the claim made here that the court below erred in its definition of proximate cause when charging the jury, and that this question was not properly submitted. The charge of the court in this case was very complete and comprehensive upon all of the points involved, and proximate cause was defined with a great deal of pains, the court relying upon the definition which has been laid down in our own reports; and great care being taken to so state the law that it would be understood by the jury, and not tend to confuse and mislead. This definition has not always been in the same language, but, in substance, the court followed the recent cases of Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640; Wallin v. Eastern Ry. Co., 83 Minn. 149, 86 N. W. 76. It is obvious that the charge on the question was sufficiently clear and comprehensive, and it is quite certain that, had the instructions proposed by defendants' counsel been given, the jury would have had a much less intelligent idea of the rule of proxi- mate cause, and how it should be applied to the facts here, than was conveyed by the charge as given by the court.

Finally, the scow and the Grover met in the canal, a waterway, in which each was proceeding; and the latter was forced into the piling by the negligent handling and management of the former by the tug. Under the circumstances, it is apparent that this negligent handling and management was the predominating efficient cause of the injury, within the meaning of all of the decisions, although the destruction of the piling was the immediate act of the Grover. See McMahon v. Davidson, 12 Minn. 232 (357); Campbell v. City of Stillwater, 32 Minn. 308, 311, 20 N. W. 320; Johnson v. N. W. Tel. Exch. Co., 48 Minn. 433, 51 N. W. 225.

We cannot discover wherein there was error, either in the charge itself or in the refusals to charge as requested by defendants' counsel. Our conclusion is that the verdict must be sustained.

Order affirmed.