JOHN J. STROBEL v. CHICAGO, ROCK ISLAND & PACIFIC
RAILROAD COMPANY AND ANOTHER.

96 N. W. (2d) 195.

April 17, 1959—No. 37,562.

202

*Eugene A. Rerat* and *Harry H. Peterson,* for appellant.

*Harry S. Stearns, Jr.,* and *Stearns & Kampmeyer,* for respondent Heilman.

*Sullivan, Stringer, Donnelly & Sharood,* for respondent railroad.

*Stuart W. Rider, Jr.,* for Chicago, Milwaukee, St. Paul & Pacific Railroad Co., *Donald E. Engle,* for Great Northern Railway Co., *Edward M. Glennon,* for Minneapolis, St. Paul & Sault Ste. Marie Railroad Co., *Grannis & Grannis,* for Chicago Great Western Railway Co., *W. S. Lycan, Jr.,* for Northern Pacific Railway Co., and *William J. Powell,* for The Minneapolis & St. Louis Railway Co., amici curiae in support of petition for rehearing.

MATSON, JUSTICE.

Plaintiff appeals from a judgment for both defendants.

This personal injury action by plaintiff, a railroad employee, is brought against defendant Heilman, a motorist, on the theory of common-law negligence and against defendant railroad, Chicago, Rock Island and Pacific Railroad Company, for negligence under the Federal Employers' Liability Act (35 Stat. 65, as amended, 45 USCA, § 51).

Defendant railroad, herein called the Rock Island, is engaged in interstate commerce and owns and maintains a double-deck drawbridge spanning the Mississippi River near Inver Grove, Minnesota. Plaintiff, an employee of the Rock Island, while standing on a ladder repairing railroad signals located on the bottom side of the upper deck of the bridge, was injured when knocked from the ladder by a delivery truck driven by defendant Heilman.

The bridge has two decks, the upper deck being occupied by a single set of railroad tracks and the lower deck being leased to the Minnesota Highway Department for vehicular traffic. The bridge is about 1600 feet in length and has a clearance of approximately 12 feet between the upper and lower decks. The roadway on the lower deck is 18 feet wide.

The drawspan of the bridge is about 440 feet in length and, instead of being raised upward for the passage of river craft, swings on a center pivot. Located immediately underneath each of the four rail ends of the stationary part of the bridge is a signal control box which assures proper horizontal and vertical alignment of the rails. Each control operates in such a way that if the rail on the drawspan is out of vertical alignment with the rail on the stationary part of the bridge more than the maximum tolerance allowed by the Interstate Commerce Commission, the railroad signals automatically flash "stop" prohibiting any trains from crossing the bridge. Since the control boxes are located directly beneath the bridge's upper deck, any repairs necessary must be made from a ladder standing on the lower or motor vehicle deck of the bridge.

For 7 years plaintiff had been employed by Rock Island as a signal maintainer. On July 20, 1956, a bright and clear day, plaintiff was sent to the Inver Grove bridge to repair a defective control box. Using a 14-foot ladder, owned by the railroad and kept on the bridge for repair purposes, plaintiff placed the ladder in the westbound traffic lane 4 feet from the edge of the roadway. No flags, barricades, or other warning devices were placed around the ladder. While plaintiff was on the

ladder, defendant Heilman entered the bridge, driving west in a sedan delivery truck. At the time Heilman entered the bridge from the east, another vehicle was entering from the west and according to his testimony occupied most of Heilman's attention. Heilman hit plaintiff's ladder at a speed of approximately 15 miles per hour, knocking plaintiff to the roadway below whereby he injured both feet.

Upon special interrogatories which required special findings on the issues of negligence and proximate cause as to each defendant and as to contributory negligence and proximate cause as to the plaintiff, the jury returned a special verdict whereby it found that Rock Island was negligent but that its negligence was not a proximate cause of the accident; that defendant Heilman was not negligent; and that plaintiff was contributorily negligent.

The issues on this appeal are: (1) Whether, upon request of the jury for additional instructions, the court erroneously defined proximate cause in terms of the "dominant cause"; (2) whether the issue of intervening cause was properly submitted to the jury; and (3) whether defendant Heilman was negligent as a matter of law.

■ In its initial charge to the jury the trial court correctly defined proximate cause. Subsequently, the jury informed the court that in passing on the issue of whether Rock Island's negligence was a proximate cause of the accident, they differed as to the meaning of the word "proximate." The trial judge reminded the jurors that he had already given them the requisite definition. The foreman replied that they must have forgotten it. The court, after agreeing that they must have forgotten his initial definition, again defined proximate cause in the usual manner but amplified such definition by adding thereto the following sentence:

"It is the efficient cause, *the dominate* [sic] *cause, the one* that necessarily sets in operation the factors to accomplish the injuries." (Italics supplied.)

(It may be assumed that the word *dominate* is an erroneous recording of the word *"dominant."*) This amplified definition was reread to the jury and was given under circumstances which must reasonably have led the jurors to understand that it entirely supplanted any recollection they had of the definition in the court's initial charge.[1] Where a jury

returns for an additional instruction on a principle of law covered by the court's original charge, such additional instruction, when challenged for alleged error, is not, as a general rule, to be considered separately but as an integral part of the original charge *unless* the additional instruction was given in such a manner or under such circumstances as would reasonably lead the jury to infer that it wholly supplanted the corresponding portion of the original charge.[2]

The instruction that a proximate cause is the *dominant* cause was clearly erroneous since a cause is dominant only if it excludes and overshadows all other causes. Manifestly only one of two or more causes of an injury can be dominant. In view of the unmistakable meaning of the word dominant, the jury must reasonably have assumed that it was compelled to find that the actions of one actor and one actor only—whether a plaintiff or a defendant—could be the proximate cause of the accident. The instruction clearly contravened § 51 of the Federal Employers' Liability Act which establishes liability for injury resulting, *in whole or in part,* from the negligence of a common carrier.[3] That the negligence of a common carrier as an employer need not be a

[1] See Rea v. Missouri, 84 U. S. (17 Wall.) 532, 21 L. ed. 707, where the court stated that the more reasonable inference is that the jury considered the supplemental charge as explanatory and corrective of the original.

[2] Roach v. Roth, 156 Minn. 107, 110, 194 N. W. 322, 323, is not a controlling case to the contrary. We said therein that in considering an objection to a supplementary charge "the circumstances under which it was given must not be overlooked." In that case it was explicitly pointed out that the supplementary instruction came in response to the jury's question as to whether the comparative negligence principle was applicable. In answering the question the court instructed that negligence in any degree whatsoever would bar the recovery for the plaintiff. Although the additional instruction was technically incorrect under Craig v. Benedictine Sisters Hospital Assn. 88 Minn. 535, 93 N. W. 669, it was intended only to answer the question as to applicability of the comparative negligence rule and not as a general statement of the law of negligence. Here, the trial court's instruction was intended as a general statement of the law of proximate cause and was given under circumstances indicative of an intent to supplant the initial charge.

[3] Albertson v. Chicago, M. St. P. & P. R. Co. 242 Minn. 50, 64 N. W. (2d) 175, 42 A. L. R. (2d) 1044.

dominant cause but need only be the slightest cause, in order to establish liability under the Federal Employers' Liability Act, is illustrated by the jury test enunciated by the United States Supreme Court in Rogers v. Missouri Pac. R. Co. 352 U. S. 500, 506, 77 S. Ct. 443, 448, 1 L. ed. (2d) 493, 499, where the court said:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. * * * The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence." (Italics supplied.)

The definition of proximate cause as the "dominant" or "predominant" cause is erroneous not only in actions under the Federal Employers' Liability Act but also as applied to other negligence actions despite the fact that these terms have found inadvertent approval in some of our decisions. The dominant-cause test has long been deemed misleading and unsuitable for cases involving concurrent negligence of several wrongdoers.[4] It is elementary that the negligence of each of two or more actors may be the proximate cause of an injury and that no actor's negligence ceases to be a proximate cause merely because it does not exceed the negligence of other actors. Any holding to the contrary would be absurd. It would inevitably follow that if no joint tortfeasor's negligent actions be found the dominant cause, the injured party would be left without a remedy. Similarly, in applying the test, if a defendant's negligence were deemed the dominant cause, thus the proximate cause, of plaintiff's injuries, then contributory negligence, not being dominant, could never act as a bar. The dominant test is misleading and serves no useful function. We therefore expressly overrule our prior decisions in so far as any of them give approval to the "dominant"

---

[4] See, Smith, *Legal Cause in Actions of Tort,* 25 Harv. L. Rev. 303, 316 to 317, note 41; 13 Dunnell, Dig. (3 ed.) § 7000e.

or "predominant" test of negligence as a definition of proximate cause.[5]

■ It is immaterial that plaintiff was absent from the courtroom and therefore failed to take an exception to the additional instruction. Although Rule 51, Rules of Civil Procedure, provides that no party may assign as error unintentional misstatements and verbal errors or *omissions* in the charge unless he objects before the jury retires, the rule expressly embraces an exception as to errors of fundamental law or controlling principle, and these latter, as was done here, may be assigned as error for the first time in the motion for a new trial. Erroneously defining proximate cause as dominant cause is not merely an inadvertent omission but an affirmative error of fundamental law. Greenberg v. Holfeltz, 244 Minn. 175, 69 N. W. (2d) 369, relied upon by one of the defendants, is distinguishable. We there held that the failure to define the term "proximate cause" was not error with the respect to fundamental law or controlling principle. In the Greenberg case—and also in the earlier decision upon which it was based, namely, Klaman v. Hitchcock, 181 Minn. 109, 231 N. W. 716—the trial court instructed the jury that an actor's negligence must be a proximate cause of the injury without, however, defining "proximate cause." In the Klaman case we pointed out that the words "proximate cause" are common English words and reasonably well understood by the layman. Clearly, in the absence of a request, where the trial court's attention is not seasonably directed thereto, the failure of the trial court to define proximate cause in its charge is merely an inadvertent error by way of omission, but, in contrast thereto, where the trial court commits an affirmative error by erroneously defining proximate cause as the dominant cause, the error is one of fundamental law or controlling principle. The analogy between the Greenberg and Klaman cases and this case is the same as the analogy between nonfeasance and misfeasance.

■ The jury was instructed that any negligence of the Rock Island

---

[5]Among our decisions so overruled are: Butler-Ryan Co. v. Williams, 84 Minn. 447, 88 N. W. 3; Russell v. German Fire Ins. Co. 100 Minn. 528, 111 N. W. 400, 10 L.R.A. (N.S.) 326; Evans v. Chicago & N. W. Ry. Co. 109 Minn. 64, 122 N. W. 876, 26 L.R.A. (N.S.) 278; Sworski v. Colman, 204 Minn. 474, 283 N. W. 778; Anderson v. Johnson, 208 Minn. 373, 294 N. W. 224; Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788.

could not be a proximate cause of the injury if any acts of plaintiff constituted an efficient intervening cause. It is elementary that a superseding, intervening act of a third person or plaintiff will break the chain of causation set in force by the defendant and insulate defendant's negligence as a direct cause of the injury.[6] It was error to permit the jury to consider whether plaintiff's acts constituted an intervening cause absolving the Rock Island from liability. Under the Federal Employers' Liability Act contributory negligence is not a bar to the recovery of damages resulting in whole, or in part, from defendant's negligence and operates only for the limited purpose of effecting a proportionate diminution in the amount of damages.[7] In short, the Federal Employers' Liability Act has abolished contributory negligence (as well as assumption of risk) as a bar to recovery.[8] On the other hand, intervening cause is a proximate cause concept with the result that if plaintiff's actions constitute the sole cause (i. e., intervening), defendant's negligence can of course not be a proximate cause of the injury. It is of paramount importance in F.E.L.A. cases to separate the concepts of contributory negligence and intervening cause attributable to plaintiff's own actions.

■ One prime distinction between the two concepts is that intervening cause comes into operation following the original negligent act.[9] Secondly, to insulate defendant's original negligence the intervening cause generally cannot be reasonably foreseeable.[10] Only when there might be a reasonable difference of opinion regarding the foreseeability of the intervening act should the question of intervening cause be sub-

---

[6]E. g., Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221; 13 Dunnell, Dig. (3 ed.) § 7005(2); Prosser, *The Minnesota Court on Proximate Cause,* 21 Minn. L. Rev. 19, 37.

[7]Albertson v. Chicago, M. St. P. & P. R. Co. 242 Minn. 50, 64 N. W. (2d) 175, 42 A. L. R. (2d) 1044.

[8]See, Metzenbaum & Schwartz, *Defenses Under the F.E.L.A.* 17 Ohio St. L. J. 416; 35 Stat. 66, 45 USCA, § 53.

[9]Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; 13 Dunnell, Dig. (3 ed.) § 7005(2); Prosser, Torts (2 ed.) § 49; Teller, Torts, § 89.

[10]13 Dunnell, Dig. (3 ed.) § 7005(6); Prosser, Torts (2 ed.) § 49.

mitted to the jury.[11] Any acts of plaintiff which could here be found to constitute a superseding and intervening cause would consist primarily of his failure to take reasonably precautionary measures to protect himself by setting out available red flags or other warning signals to warn passing motorists of his precarious position on the ladder. Since, however, defendant Rock Island's negligence must have consisted of failure to properly protect plaintiff, it could not have been so unforeseeable to such defendant (as to constitute a jury question) that plaintiff too would fail to take these precautionary measures even though plaintiff's actions occurred later in time than defendant's original negligence. It is thus apparent that plaintiff's inaction was not an intervening cause but rather acts of possible contributory negligence. If the actions of plaintiff in an F.E.L.A. case are so remote as not to be reasonably foreseeable, it is error to instruct the jury that these actions may constitute an efficient, intervening cause barring plaintiff's recovery since to do so would by indirection under the label of intervening cause wrongfully reinstate contributory negligence as a bar to recovery under the F.E.L.A.[12]

■ Prejudicial errors in the charge require a new trial. Since upon a new trial the issue may arise again, it is desirable to consider whether it was error to permit the jury to determine if Heilman's acts constituted an efficient intervening cause. Upon the evidence it is a close question. Although it was reasonably foreseeable that Heilman and other motorists would be driving over the bridge in the lane in which plaintiff had placed the ladder, we cannot hold as a matter of law that it was reasonably foreseeable that Heilman, who entered upon the bridge in low gear at a speed of about 8 miles per hour, and who admittedly killed his motor after driving 50 to 70 feet on the bridge, would drive an additional 200 or more feet (or a total bridge distance of 275 feet) without seeing

---

[11]Prosser, Torts (2 ed.) § 50; see, also, Schmanski v. Church of St. Casimir of Wells, 243 Minn. 289, 67 N. W. (2d) 644; 13 Dunnell, Dig. (3 ed.) § 7011, p. 624.

[12]Cf. Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 63 S. Ct. 444, 87 L. ed. 610; Buffo v. Baltimore & Ohio R. Co. 364 Pa. 437, 72 A. (2d) 593; Finnegan v. Monongahela Connecting R. Co. 379 Pa. 63, 77, 108 A. (2d) 321, 328; 17 Ohio St. L. J. 416.

directly in front of him plaintiff on a ladder in a position of peril without taking steps to avoid the collision. Whether, under the circumstances, Heilman's failure to stop or take other steps to avoid colliding with plaintiff's ladder was an intervening and proximate cause which broke the chain of causation from any prior negligence of the Rock Island was for the jury. Where a second-party tortfeasor as the driver of an automobile approaches plaintiff, who is in plain sight and in a position of obvious peril for a sufficient length of time to enable such driver in the exercise of reasonable care to avoid a collision, and he fails to do so, the driver's failure to act so as to avoid the collision is an efficient, intervening, and proximate cause of plaintiff's injuries which breaks the natural sequence and progression of the original tortfeasor's negligence as a proximate cause.[13]

Upon the record we cannot say that Heilman was guilty of negligence as a matter of law. We are not passing on the issue of whether the evidence sustains the jury's finding that Heilman was not negligent since we have come to the conclusion that, in the interest of justice, there must be a new trial as to all parties.

We find, however, that 105 pages of the record were wholly unnecessary to a proper presentation of the issues involved upon this appeal, and therefore as to the taxation of costs and disbursements no allowance will be made for such unnecessary printing.

The judgment of the trial court is reversed and a new trial is granted. Reversed.

The opinion filed herein on February 20, 1959, is withdrawn and the foregoing modified opinion is substituted in lieu thereof. The petition for reargument is denied.

---

[13]See, Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526; Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; 13 Dunnell, Dig. (3 ed.) § 7005; Prosser, Torts (2 ed.) § 49.