Michael HAFNER, et al., Plaintiffs,

v.

David Thomas IVERSON, Defendant and Third Party Plaintiff,

BURLINGTON NORTHERN, INC., Defendant and Third Party Plaintiff, Appellant,

v.

COLLINS ELECTRIC, Third Party Defendant, Respondent.

No. C9-83-142.

Supreme Court of Minnesota.

Jan. 27, 1984.

---

Donald E. Engle, H.K. Bradford, Jr., Michael Saeger, Burlington Northern, Inc., St. Paul, for David Thomas Iverson, defendant and third party plaintiff, and Burlington Northern, Inc., defendant and third party plaintiff.

J.W. Cragg, Cragg & Bailly, Ltd., Minneapolis, for respondent.

SIMONETT, Justice.

We do not believe, on the facts of this case, that any negligence of the third-party plaintiff truck driver was, as a matter of law, a superseding, intervening cause of the accident; we reverse the directed verdict for the third-party defendant and remand for a new trial.

Plaintiffs Lloyd Barrett and Michael Hafner are employees of Collins Electric. On the morning of June 21, 1979, they were in a bucket attached to a truck crane which extended out over Snelling Avenue in St. Paul, engaged in repairing a suspended

traffic light. A Burlington Northern truck, operated by David Iverson and proceeding southerly on Snelling, struck the bucket, injuring both Barrett and Hafner.

Barrett and Hafner commenced suits for their personal injuries against defendant Burlington Northern, Inc., and its truck driver, defendant David Iverson. The defendants in turn, as third-party plaintiffs, commenced a third-party action against plaintiffs' employer, Collins Electric, for contribution under the doctrine of *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977). Plaintiffs' cases were consolidated but settled by defendants prior to trial. Burlington Northern and Iverson, as third-party plaintiffs, then went to trial against Collins Electric on their contribution claim. At the close of the testimony, the trial court directed a verdict in favor of Collins Electric, the third-party defendant, ruling that the negligence of the Burlington Northern driver superseded any negligence of Collins Electric, so that Burlington Northern's negligence was the sole, direct cause of the accident. Burlington Northern, Inc., appeals the trial court's order.

Snelling Avenue runs north and south with two lanes for traffic in each direction, plus a parking lane on each side. The Collins Electric work crew parked its "bucket truck" in the southbound parking lane, facing south, with its flashing blue lights on. The truck's "arm," with the bucket at its end, extended out easterly over to the far southbound traffic lane to reach the defective traffic signal. In the bucket were Barrett and Hafner. Because of sewer and water construction work in the area, there were flashing markers on Snelling Avenue for 6 blocks to the north of the accident scene. There were also five warning "cones" set up around the truck.

Defendant-appellant Iverson, 61 years old, an experienced driver, was driving his truck southbound on Snelling at about 15–20 m.p.h. He was driving in the lefthand traffic lane, the traffic lane closest to the center line. When about a half block from the intersection, Iverson saw the suspended bucket up ahead. The bucket was behind and slightly beneath the traffic light. Iverson says he did not see the men in the bucket, apparently because his view was somewhat obscured by the traffic light. Iverson thought his truck box would clear beneath the bucket, and he continued in the lefthand lane. The top of the truck box struck the bucket, causing a 4- to 6-inch gouge in the bottom of the bucket and seriously injuring the two workmen. The accident happened in morning rush hour traffic between 7:40 and 8 a.m., after the bucket had been in position over the lefthand lane for about 5 minutes. During this short time, the two workmen had seen other trucks switch lanes to avoid the suspended bucket. On the other hand, before putting the bucket in place, the workmen noticed trucks passing beneath the signal light.

The minimum legal height for the traffic signals was 16 feet 6 inches, but in fact, as later determined, the signals were only about 14 feet above the road surface. The bucket bottom was apparently about 12 feet 4 inches from the ground. The top of the Burlington Northern truck box was 12 feet 7 inches high.

The foreman for the Collins Electric crew had assigned Barrett and Hafner to the job but he was not present nor had he viewed the scene before the accident. Hafner testified he knew the traffic light was "too low." The workmen admitted they could have raised the traffic light before repairing it. Instead, they decided to repair the signal light first, which would take about an hour and a half, and then raise the light. The Burlington Northern truck was within the maximum allowable legal height but the two workmen said they were unaware what that maximum was.

The trial court ruled that "any negligence [which] could conceivably be found and attributed to plaintiffs or Collins Electric * * * was superseded by the negligence of Iverson." There was, we think, evidence from which the jury could have found negligence on the part of both Collins Electric and Burlington Northern.

Thus, the decisive issue is whether the negligence of the truck driver, Iverson, would be, as a matter of law, an intervening, superseding cause of the accident. We think reasonable minds could differ on this question.

Collins Electric argued, and the trial court agreed, that the truck driver saw the bucket suspended over his traffic lane creating a situation of potential danger to someone, here the two workmen; that this danger was open and obvious; and that the truck driver's failure to either stop and investigate or switch to another lane was the direct cause of the accident.

Iverson knew his truck box was within the legal height limit. He saw, of course, the flashing markers and the suspended bucket up ahead. He did not stop before reaching the bucket because, as he put it, "I don't like to stop in the middle of Snelling Avenue and the traffic behind." There were no signs or flagmen indicating low clearance. Iverson said, "I thought I would clear it, and I was in the lane I wanted to be in." He said he had never thought the signal was less than 13 feet high, but he also said he guessed his truck's height was 13 feet. He said he "eyeballed" the situation, that he thought he would clear the suspended obstruction and therefore continued on, but "[i]t was lower than what I estimated it at."

■ "Generally speaking, a superseding, intervening cause is an act of plaintiff or of a third person, in no way caused by defendant's negligence, or a force of nature, occurring *after* defendant's negligent act or omission and operating as an independent force to produce the injury." *Medved v. Doolittle*, 220 Minn. 352, 356, 19 N.W.2d 788, 791 (1945) (emphasis in original). Here one of the key characteristics of superseding, intervening cause is present; the truck driver's conduct in driving into the suspended bucket happened *after* the workmen had located their bucket. Probably it can also be said that the truck driver's conduct was independent of any act or omission of the third-party defendant's unless it was causal negligence not to have posted a flagman or signs warning of low clearance. Another requirement, however, to insulate the workmen's original negligence is that the intervening cause, here the truck driver's conduct, could not have been reasonably foreseen by the workmen. *See Rieger v. Zackoski*, 321 N.W.2d 16 (Minn.1982); *Strobel v. Chicago, Rock Island & Pacific R. Co.*, 255 Minn. 201, 208, 96 N.W.2d 195, 201 (1959).

It seems to us it is a jury issue whether or not the Collins Electric personnel reasonably should have foreseen that a truck, proceeding properly in the lefthand, southbound lane of Snelling Avenue would have misjudged the height of the signal light and the bucket behind and slightly beneath it. A jury might find it was reasonable for the truck driver to believe that the signal light was at or near the height it was legally supposed to be. If it had been, there would have been no accident. A jury might find that it was unreasonable not to foresee that a driver, in rush hour traffic, might misjudge the height of the signal light and bucket suspended above street level.

This case is unlike *Medved v. Doolittle*, where we held as a matter of law that there was superseding, intervening cause. There defendant Doolittle, southbound on an open highway in daylight hours, saw a disabled truck parked up ahead in his southbound lane. Doolittle first saw the parked truck when he was a quarter of a mile from it. He continued to see it in front of him as he got closer, but then, when about 150 feet away, he looked sideways at his wife and ran into the rear of the truck. Doolittle's claim that he thought the truck was moving was given little credence, as he admittedly was aware he was rapidly closing the distance between his vehicle and the vehicle up ahead. This court held that Doolittle's negligence, as a matter of law, was a superseding, intervening cause of the accident. Our case here is quite different. Doolittle saw ahead of him an obstruction that he would undoubtedly hit unless he moved out of the way. *Accord Barrett v. Nash Finch Co.*,

228 Minn. 156, 36 N.W.2d 526 (1949). On the other hand, Iverson, our truck driver, saw ahead of him an obstruction that a jury could find he reasonably thought he would not hit because it was sufficiently elevated above his truck. Or, to put it another way, a jury could find that the potential for harm created by the bucket suspended at a deceptive height by the work crew created an unreasonable risk to traffic that was foreseeable by the Collins Electric work crew. *See Rum River Lumber Co. v. State*, 282 N.W.2d 882, 884 (Minn.1979).

■ We hold, therefore, on these facts, that whether truck driver Iverson's conduct was a superseding, intervening cause of the accident is a jury issue.

2. This brings us to the second issue. Respondent Collins Electric argues that, in any event, Burlington Northern's action for contribution is barred "by application of the fellow servant doctrine." The trial court did not reach this issue but, having now granted a new trial, the question is before us.

As third-party plaintiff, Burlington Northern seeks contribution for the sums it paid Michael Hafner and Lloyd Barrett to settle their respective personal injury claims from Collins Electric, the claimants' employer. Collins Electric says this cannot be done. As to contribution for the Hafner settlement, Collins Electric argues that any negligence attributable to it would have to be that of the other workman, Lloyd Barrett, but Barrett cannot be liable to his co-employee, Hafner, under the fellow-servant doctrine. The same argument is then made, reversing the co-employees, for the Barrett contribution claim. If neither workman is liable for the other workman's injuries, and if there is no other "independent" negligence on the part of Collins Electric, then there is no common liability for those injuries between Burlington Northern and Collins Electric and the contribution action fails. This argument has no merit.

■ Under *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), a third-party tortfeasor (here Burlington Northern) may recover limited contribution from the negligent employer. The negligence of Collins Electric in causing employee Hafner's injuries is the negligence of employee Barrett, under the rule of *respondeat superior* that a servant's acts are his master's acts. The fellow-servant doctrine is an exception to the rule of *respondeat superior*. Collins Electric is really arguing that we should extend this exception to a contribution action against an employer in a *Lambertson* setting. We decline to do so. To apply the fellow-servant doctrine would subvert *Lambertson*. Moreover, we have said that the fellow-servant doctrine "does not rest on any very satisfactory basis and is not to be extended." *Lunderberg v. Bierman*, 241 Minn. 349, 356, 63 N.W.2d 355, 360 (1954). In *Lunderberg*, we held that an employer could not assert the fellow-servant doctrine to defeat a third party's indemnity claim, stating that the doctrine "has no application in connection with the liability of the master to a third party." *Id.*, 241 Minn. at 356, 63 N.W.2d at 361. We hold that the fellow-servant doctrine does not apply in a *Lambertson* contribution action.

■ At trial it appears that the negligence of the *plaintiff* employee must be separated from the negligence of the employer. The plaintiff employee's negligence goes to his own contributory negligence and is accounted for in the size of plaintiff's damages, whether arrived at by verdict or, as here, by settlement. If the percentage of negligence of the plaintiff employee were attributed to the employer, that negligence would be counted twice. Only the negligence of other agents or employees of the employer (or the employer himself, if a sole proprietor) should be counted to determine the employer's percentage of negligence for contribution purposes. Here, where the co-employees are also co-plaintiffs, the negligence of each will have to be found.

Reversed and remanded for a new trial.