*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0781**

RKL Landholdings, LLC,
Appellant,

vs.

Seneca Specialty Insurance Company,
Respondent,

1563 University Ave, LLC,
Appellant.

**Filed May 4, 2015
Affirmed
Chutich, Judge**

Ramsey County District Court
File No. 62-CV-10-2352

Daniel L. M. Kennedy, Kennedy Law Group, Minneapolis, Minnesota (for appellants)

Paul C. Peterson, William L. Davidson, João C. Medeiros, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota; and

Christopher P. Leise (pro hac vice), White and Williams LLP, Cherry Hill, New Jersey (for respondent)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellants RKL Landholdings, LLC and 1563 University Ave, LLC request a new trial, arguing that the district court improperly instructed the jury, erred in admitting an exhibit, and erred in denying their motion for judgment as a matter of law. Because the jury instructions were proper, the district court did not err in admitting an exhibit, and the district court properly denied judgment as a matter of law, we affirm.

## FACTS

In July 2009, an 8,100 square-foot office building located at 1563 University Avenue West (the property) was set on fire and damaged. The police concluded that the fire was arson. The property's owner, RKL Landholdings, LLC, sought insurance proceeds from its insurer, respondent Seneca Specialty Insurance Company (Seneca). Seneca refused coverage, and RKL filed a declaratory action against Seneca. RKL also sued 1563 University Ave, LLC (1563 University), the entity that purchased the property under a contract for deed and subsequently defaulted after the fire.[1] Seneca counterclaimed, alleging, among other things, that RKL and 1563 University were responsible for the fire.

During a seven-day trial, the following relevant facts emerged. In 2002 or 2003, Emad Abed, the sole owner of RKL, bought the property for $345,000. In January 2008, the property sustained an estimated $554,254 in water damage, and Abed received

---

[1] After summary judgment, RKL settled with 1563 University in exchange for 1563 University signing over all claims to any amount recovered under the Seneca insurance policy. The record does not reflect when this settlement occurred.

$152,824 from an insurance claim settlement with the property's then-current insurer. Abed did not use the proceeds to repair the property. Immediately following the water damage, the property's remaining tenant left.

Following the water damage, in June 2008, the City of Saint Paul declared the property vacant and sent Abed a notice revoking the property's certificate of occupancy. The city also sent Abed two additional notices in November and December 2008, requiring the property to be registered as a vacant building. Abed testified that he did not remember receiving the notices and assumed that he did not receive them because he moved condominium units in June 2008. Abed's new condominium unit, however, was located in the same building as his previous unit, which he had sold to a friend.[2]

In February 2009, Abed sold the property to 1563 University for $2,000,000 on a contract for deed. The contract provided for a $5,000 down payment, with the remaining $1,995,000 payable in three months. Faisal Dahdal, the sole owner of 1563 University, had not attempted to secure any financing before signing the contract for deed, and when he applied for loans afterwards, he was denied. Four years before Dahdal signed the contract for deed, he had filed for bankruptcy, and in 2008, his gross reported income was $7,550. Dahdal testified, however, that in 2007 he inherited assets in his home country of Jordan worth $1,500,000.

Before Dahdal purchased the property, he also did not have anyone inspect it, appraise it, or run a title report. He was also unaware of the property's preexisting water

---

[2] The woman who purchased the condominium from Abed is the same woman who provided Abed's alibi for the weekend that the property caught fire.

damage until May 2009—four months after he signed the contract for deed—but testified that his assessment of the property's value would not have changed had he known of the water damage.

At trial, Seneca asserted a defense of misrepresentation, alleging that Dahdal and Abed had engaged in multiple forms of misrepresentation throughout the insurance application process that rendered Seneca's policy void. Specifically, Seneca argued that Dahdal and RKL's contract for deed was a sham meant to secure higher coverage from Seneca that far exceeded the property's actual value. In furtherance of this defense, Seneca introduced the only insurance application that Seneca had on file for the property. The entity name on the insurance application was "1563 *West* University Ave, LLC," but Dahdal's entity that purchased the property was named "1563 University Ave, LLC."

The discrepancy in applicant names arose from a previous potential buyer for the property, A.S. One year before Abed sold the property to Dahdal, Abed had negotiated to sell the property to A.S., who wanted to purchase the property using the entity name 1563 West University Ave, LLC. In the midst of negotiations, Abed introduced A.S. to an insurance agent with the Glover Insurance Agency, Blaine Williams. Williams filled out an insurance application for the property at the meeting. The application stated that the property was 100% occupied and had not suffered any losses in the past five years. Williams testified that Abed provided the majority of the information for the application.[3]

---

[3] Williams admitted that he did not specifically remember which questions A.S. answered and which questions Abed answered, but he testified that A.S. supplied very little information.

The insurance application was then forwarded to Burns & Wilcox, a surplus lines insurance broker, who in turn forwarded it to Seneca. On October 7, 2008, Seneca issued a commercial property quote for the property stating that coverage was contingent upon Seneca receiving financials from A.S. within 10 days. A.S. ultimately did not buy the property or provide Seneca with the requisite financials.

On February 4, 2009, Seneca received a request to bind coverage on the property. In response, Seneca issued a commercial property binder to confirm coverage, listing the insured as "1563 West University Ave LLC." The second page of the binder stated that approval was subject to Seneca's receipt of acceptable financials within 10 days and an inspection of the property. After prompting from the Glover Insurance Agency, Dahdal eventually produced the requisite financials; however, the financials that Dahdal produced were not from 1563 University—they were from another company affiliated with Dahdal's family's business.

On March 2, 2009, Seneca issued the property's finalized policy and sent an inspector out to examine the property. Abed and Dahdal were present during the inspection. The inspector's report said that no losses were learned of or reported and that two full-time employees occupied the property. Upon learning that the actual occupancy was far less than the 100% stated on the property's insurance application, Seneca e-mailed Burns & Wilcox requesting an explanation for the discrepancy. Burns & Wilcox contacted Bernard Glover, the owner of Glover Insurance Agency, who in turn contacted

Abed.[4]   Each time Glover asked Abed about the occupancy, Abed told him that contractors would be working on the property.   Glover also warned Abed that Seneca would cancel the policy if the financials and occupancy issues remained unresolved. Seneca's senior underwriter testified that no information was ever provided before the fire to explain the occupancy discrepancy.

In May 2009, the contract for deed's $1,995,000 balloon payment became due. Dahdal could not make the payment, and Abed agreed to two successive two-month extensions.   On July 8, 2009, during the second of Dahdal's two extension periods, the property was set on fire.   The fire investigator determined that the fire originated on the second floor, had multiple points of origin, and was accelerated with an ignitable liquid.

At the time of the fire, RKL had also insured the property with Evanston Insurance Company for $1,000,000.[5]   Abed testified that he never submitted a claim under the Evanston policy, but in an affidavit he also stated that Evanston denied coverage.   At trial, Abed was asked why the property's second policy with Seneca—obtained only a year after the first policy with Evanston—was worth twice as much.   Abed said that $2,000,000 was appropriate because it reflected the sale price.

Before trial, the parties moved for summary judgment.   Seneca argued, in part, that the contract for deed was not a genuine business transaction, and thus the insurance policy that 1563 University procured was invalid.   The district court denied the motion, concluding that "[t]he contract for deed as between RKL and 1563 [University was]

---

[4] Bernard Glover handled the property's insurance policy after Williams left.
[5] RKL secured this insurance policy one year before the fire.

valid." The district court further reasoned that whether an insurance contract existed between Seneca and 1563 University was an issue of fact for a jury.

In June 2013, a seven-day jury trial occurred. Before the jury adjourned to deliberate, RKL and Seneca exchanged drafts of proposed jury instructions and special-verdict forms. From these drafts, the district court composed final instructions and a special-verdict form. After ten hours of deliberation, the jury returned the following answers to the special verdict form:

1. Was the contract for deed a genuine business transaction?
   No.
2. Did 1563 University Ave, LLC make a material misrepresentation to Seneca Specialty Insurance Company in the application process?
   Yes.
3. Did RKL Landholdings, LLC make a material misrepresentation to Seneca Specialty Insurance Company in the application process?
   Yes.
4. Did 1563 University Ave LLC set the fire or arrange to have it set?
   No.
5. Did RKL Landholdings, LLC set the fire or arrange to have it set?
   No.
6. Was 1563 University Ave. vacant for a period of 60 consecutive days prior to the fire?
   Yes.

Based on the jury's findings, the district court entered judgment in favor of Seneca. The district court concluded that RKL and 1563 University could not recover under the property's Seneca policy because the contract for deed was not a genuine business transaction and they made material misrepresentations in the application process.

7

RKL moved for judgment as a matter of law and for a new trial, which the district court denied. RKL appealed.

## D E C I S I O N

### I. Jury Instructions

District courts are given broad discretion to determine whether to use special verdicts and to decide what form the special verdicts should take. *Poppler v. Wright Hennepin Coop Elec. Ass'n*, 845 N.W.2d 168, 171 (Minn. 2014). District courts also have considerable latitude in selecting the appropriate language for jury instructions, and this court reviews the instructions in their entirety. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). This court will not reverse jury instructions that state the applicable law fairly and correctly. *Daly v. McFarland*, 812 N.W.2d 113, 122 (Minn. 2012). A new trial is only required if the jury instructions were erroneous and the resulting error was prejudicial or if the effect cannot be determined. *Morlock v. St. Paul Guardian Ins. Co.*, 650 N.W.2d 154, 159 (Minn. 2002). The district court's refusal to give a requested jury instruction is reviewed for an abuse of discretion. *Daly*, 812 N.W.2d at 122.

"A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." Minn. R. Civ. P. 51.03(a). An objection is timely if (1) the party was informed of the instruction before the jury receives them and the party properly objects before final jury arguments, or (2) if a party that was not informed of the instruction properly objects upon learning of it. Minn. R. Civ. P. 51.01(b).

8

If a party fails to properly object to a jury instruction, this court may nonetheless review the instruction for plain error. Minn. R. Civ. P. 51.04(b); *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 626 (Minn. 2012). The plain-error test requires (1) error, (2) that is plain, and (3) that affects a party's substantial rights. *Frazier*, 811 N.W.2d at 626. Error is plain if it "'contravenes case law, a rule, or a standard of conduct.'" *Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 834 N.W.2d 527, 552 (Minn. App. 2013) [hereinafter *Poppler II*] (quoting *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)), *aff'd*, 845 N.W.2d 168 (Minn. 2014).

Furthermore, reversal is not mandated if a party satisfies the plain-error test; rather, reversal is only warranted if necessary "'to ensure fairness and the integrity of the judicial proceedings.'" *Frazier*, 811 N.W.2d at 626-27 (quoting *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)). The plain-error test "'is a stringently limited standard of review, *especially in the civil context*, and must result in a miscarriage of justice in order to compel reversal.'" *Poppler II*, 834 N.W.2d at 551 (quoting *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 876 (8th Cir. 2012)).

### *Genuine Business Transaction*

RKL and 1563 University argue that the special-verdict form should not have asked the jury to decide whether the contract for deed was a "genuine business transaction" because the district court already determined that the contract was valid as between RKL and 1563 University. RKL and 1563 University further argue that use of the phrase was error because it was not defined and implied elements of fraud. After carefully reviewing the record, we find no error here.

When the district court drafted the jury instructions, it solicited input from the parties. During the exchange of draft instructions, RKL and 1563 University made *one* comment on the question that included the "genuine business transaction" phrase, and this comment did not object to the use of the phrase or request a definition; rather, it stated that the question was unnecessary because the district court already determined that the contract for deed was valid between RKL and 1563 University. Moreover, RKL and 1563 University *repeated* this question in its own draft jury instructions. Thus, RKL and 1563 University failed to properly object to the jury instruction, and we review for plain error. *See* Minn. R. Civ. P. 51.03(a), .04(b).

The first question on the special-verdict form asked, "Was the contract for deed a genuine business transaction?" Although the district court's August 2012 order concluded that the contract for deed was a valid contract as between RKL and 1563 University, the validity of the contract did not necessarily answer whether RKL and 1563 University entered into the contract as a way to secure higher coverage from Seneca. Consequently, the inclusion of this question was not error.

RKL and 1563 University contend that even if the question was appropriate, the phrase should have been defined for the jury. "Genuine business transaction" is not a legal term of art that requires specific instruction. The phrase contains common words that a layperson can understand. *Cf. Strobel v. Chicago, Rock Island & Pac. R.R. Co.*, 255 Minn. 201, 207, 96 N.W.2d 195, 200 (1959) (concluding that the district court's failure to define commonly understood words was not a fundamental error requiring

10

reversal).  Because a layperson can understand the import of the phrase, its inclusion was not error.

RKL and 1563 University further argue that the district court should have instructed the jury on the elements of fraud because asking the jury to decide if the transaction was "genuine" implied that RKL and 1563 University engaged in fraud.  But even if RKL and 1563 University could show plain error, which they cannot, reversal is only warranted "to ensure fairness and the integrity of the judicial proceeding."  *Frazier*, 811 N.W.2d at 626-27 (quotation omitted).  And here, as the district court succinctly stated in its order, "It was obvious to the court that the jurors found the testimony of the plaintiff['s] main witnesses regarding the two million dollar contract for deed's authenticity to be incredulous."

Because neither the fairness nor the integrity of this judicial proceeding was jeopardized here, we conclude that RKL and 1563 University cannot show plain error in the district court's use of the phrase "genuine business transaction."

### *Separate Misrepresentations*

RKL and 1563 University also contend that the special-verdict form should have instructed the jury to make separate findings on the five acts of misrepresentation that Seneca alleged in its defense.  Without this separation, RKL and 1563 University argue that the jurors could have disagreed as to which of the five acts amounted to misrepresentation.  Because RKL and 1563 University objected to the lack of this instruction at trial, we review the district court's decision for an abuse of discretion.  *See State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011).

11

Here, the jury was required to answer two questions regarding misrepresentation: (1) Did 1563 University Ave, LLC make a material misrepresentation to Seneca Specialty Insurance Company in the application process? and (2) Did RKL Landholdings, LLC make a material misrepresentation to Seneca Specialty Insurance Company in the application process? The jury answered affirmatively to both questions. The two questions on the special verdict form were specific and aimed at the heart of the case: whether RKL and 1563 University misrepresented information to Seneca to obtain insurance for the property.

RKL and 1563 University argue that the jury should have been required to agree on what act equated to misrepresentation. They cite *State v. Stempf*, 627 N.W.2d 352, 354 (Minn. App. 2001), to assert that the jury instructions, which allowed the jurors to disagree about which acts were misrepresentation, violated their right to a unanimous verdict.

*Stempf* is a criminal case that involved heightened due-process concerns. It has never been applied in a civil context, and it is not persuasive here. Criminal cases, unlike civil cases, require each element to be proven beyond a reasonable doubt. Moreover, civil verdicts need not be unanimous if the jury has deliberated for six hours. Minn. Stat. § 546.17 (2014); *see* Minn. Const. art. I, § 4. Furthermore, it was not necessary for the jury to specifically identify which act amounted to misrepresentation, so long as the jury found that RKL and 1563 University committed *one* act of misrepresentation. We therefore conclude that the district court properly exercised its discretion here. *See Daly*, 812 N.W.2d at 122.

12

*Agency Instruction*

Before deliberations, RKL and 1563 University moved the district court to direct the jury as a matter of law that the Glover Insurance Agency, Bernard Glover, and Blaine Williams were all Seneca's agents and that Seneca was responsible for their acts and misrepresentations.[6] Seneca also moved the district court to instruct the jury as a matter of law that Glover was *not* Seneca's agent. The district court denied both motions, reasoning that whether an agency relationship existed was a question of fact for the jury to decide. Accordingly, the district court instructed the jury on the definitions of "insurance agent" and "insurance broker" and set forth several factors to aid the jury in distinguishing between an agent and a broker. Because RKL and 1563 University proposed an agency instruction and objected to its absence, we review for an abuse of discretion. *See Koppi*, 798 N.W.2d at 361.

RKL and 1563 University argue that Minnesota Statutes section 65A.14 (2014) required the district court to direct the jury as a matter of law that the Glover Insurance Agency, Bernard Glover, and Blaine Williams were all Seneca's agents because without this direction, the jury could have erroneously attributed acts of misrepresentation to them. We disagree and conclude that RKL and 1563 University's argument fails legally and factually.

Seneca, as an unadmitted insurance carrier in Minnesota, is governed by the Minnesota Surplus Lines Insurance Act. *See* Minn. Stat. § 60A.195-.2095 (2014).

---

[6] These acts of misrepresentation include the inaccurate occupancy percentage reported on the insurance application and the false financial statements that Dahdal submitted to Seneca.

13

Because the Glover Insurance Agency had no license to conduct business with a surplus lines carrier, it was impossible for Williams or Glover to solicit or procure a policy from Seneca or to act as its agent or broker. *See* Minn. Stat. § 60A.198, subd. 1. No new trial is therefore warranted.

In addition, even if the Glover Insurance Agency, Bernard Glover, and Williams were agents of Seneca, the record does not show that they committed acts of misrepresentation. Rather, the record supports the jury's findings that Abed and Dahdal were the sources of false information: Williams testified that Abed told him the property was 100% occupied and that no prior losses had occurred, and during cross examination, Dahdal admitted that he gave Seneca false financials to bind the policy. Accordingly, the district court acted within its discretion in instructing the jury as it did.

### *Waiver and Estoppel Instruction*

RKL and 1563 University contend that the district court should have instructed the jury that Seneca waived several of its defenses for material misrepresentation. They argue that Seneca waived these defenses by retaining the policy's insurance payments and continuing to insure the property—despite having occupancy-related issues since March 2009. They further argue that this waiver estops Seneca from invalidating the policy because 1563 University was unaware of Seneca's concerns and therefore had no opportunity to secure alternative insurance. We disagree.

Because RKL and 1563 University requested the waiver instruction, we review the district court's decision for an abuse of discretion. *Koppi*, 798 N.W.2d at 361. Here, the district court instructed the jury to "consider this discussion of waiver only as delay or

14

inactivity as it may or may not affect your decision regarding whether a representation was material." The district court declined to instruct the jury that Seneca waived any of RKL or 1563 University's material misrepresentations and instead, it concluded that "undisputed evidence" showed Seneca had not waived any material misrepresentations.

The record supports the district court's decision not to give the waiver instruction because Seneca had refunded the property's policy premiums and continued to inquire about the occupancy status of the property. Indeed, six days before the fire, Seneca sent an e-mail to Burns & Wilcox asking about the occupancy status of the property and stating that it would cancel the policy and rewrite it as vacant if the occupancy remained low. Glover also warned Abed several times that Seneca requested an update on the occupancy status of the property.

Because the district court acted within its broad discretion here, we see no reversible error. Given that Seneca did not waive any of its material misrepresentation defenses, RKL and 1563 University were also not entitled to an estoppel instruction.

## II.     Insurance Application Exhibit

RKL and 1563 University contend that the district court's decision to admit the insurance application exhibit was erroneous because it lacked relevance and was overly prejudicial. We disagree.

The admission of evidence rests within the broad discretion of the district court. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45 (Minn. 1997) (quoting *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn. 1990)). This court will only reverse a district court's ruling on an evidentiary issue if the district court abused its discretion and

15

prejudice resulted. *Melius v. Melius*, 765 N.W.2d 411, 417 (Minn. App. 2009). "An evidentiary error is prejudicial if it might reasonably be said to have changed the result of the trial." *Ray v. Miller Meester Adver., Inc.*, 664 N.W.2d 355, 362 (Minn. App. 2003), *aff'd*, 684 N.W.2d 404 (Minn. 2004).

Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. The district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. "Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005).

Here, the insurance application was the only application that the Glover Insurance Agency had on file for the property. Williams also testified that when he filled it out, Abed provided the information. Because Abed was a named party in the suit, whether he provided information that amounted to misrepresentation was relevant.

RKL and 1563 University argue that the insurance application's relevance was outweighed by the danger of unfair prejudice. They further contend that the jury's request for the insurance application's signature page during deliberations showed that the jury was confused about who created it.

Under rule 403, unfair prejudice is more than damaging evidence; it is evidence that persuades by *illegitimate* means. *Id.* At most, the insurance application was

16

damaging to RKL and 1563 University. But it did not illegitimately persuade the jury that Dahdal was somehow involved in its creation because several witnesses testified that Dahdal was not present at the time it was created. Moreover, Dahdal's attorney repeatedly emphasized throughout trial that A.S.'s name—not Dahdal's name—was listed on the insurance application.

Because the insurance application was relevant and its relevance was not outweighed by unfair prejudice, we conclude that the district court properly exercised its discretion here.

### III.     Vacancy

Finally, RKL and 1563 University argue that the district court should have directed judgment as a matter of law in their favor regarding whether the property was vacant under the Seneca policy. They contend that the jury could not possibly have found that the building was vacant because the "uncontradicted evidence" shows that Dahdal's cousin performed renovations on the property in June 2009. We disagree.

We review de novo a district court's denial of a motion for judgment as a matter of law. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). We will affirm the denial "if, in the record, there is any competent evidence reasonably tending to sustain the verdict." *Pouliot v. Fitzsimmons*, 582 N.W.2d 221, 224 (Minn. 1998) (quotation omitted). This court will not set aside a verdict "[u]nless the evidence is practically conclusive" against it. *Id.*

Here, the City of St. Paul revoked the property's certificate of occupancy on June 12, 2008, and the city's regular inspections showed no further activity on the property.

17

RKL and 1563 University argue the property was not vacant because Dahdal testified that his cousin performed renovation work in June 2009. Dahdal's cousin, however, did not pull any permits for the work and returned to his home in California several weeks after starting. Dahdal did testify that his cousin planned to return and finish working on the property, but the jury clearly disbelieved this testimony. And we defer to the jury's credibility determination. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (concluding that credibility determinations rest exclusively with the factfinder and we defer to those determinations even when they are implicit).

Because competent evidence in the record reasonably sustains the final verdict here, the district court did not err in refusing to grant RKL and 1563 University judgment as a matter of law on the issue of vacancy.

**Affirmed.**